854 So.2d 544 (2002)
Donald L. JOHNSON and Florence Radiology Associates, P.C.
v.
Janet STEWART and Donald Stewart.
1011114.
Supreme Court of Alabama.
October 18, 2002.
Opinion on Denial of Rehearing February 28, 2003.
*546 Matthew H. Lembke and Scott Burnett Smith of Bradley Arant Rose & White, LLP, Birmingham; and Gary C. Huckaby and Kenneth B. Cole of Bradley Arant Rose & White, LLP, Huntsville, for appellants.
Frank B. Potts and Debra H. Coble of Potts & Young, L.L.P., Florence, for appellees.
WOODALL, Justice.
A jury found in favor of Donald Stewart ("Dr. Stewart") and his wife Janet Stewart on their invasion-of-privacy claims, awarding each nominal damages of $1.00 and punitive damages of $1 million against the defendants Donald L. Johnson and Florence Radiology Associates, P.C. (hereinafter referred to collectively as "Dr. Johnson"). Dr. Johnson filed a postjudgment motion seeking, alternatively, a judgment as a matter of law, a new trial, or a remittitur of the punitive-damages awards. The trial court denied the motion insofar as it sought a judgment as a matter of law or a new trial. However, the trial court ordered Dr. Stewart to accept a remittitur of the punitive damages from $1 million to $500,000, and ordered Janet Stewart to accept a remittitur of the punitive damages from $1 million to $350,000, or else it would order a new trial. The Stewarts accepted the remittiturs.
Dr. Johnson appeals, contending that he was entitled to a judgment as a matter of law on the Stewarts' invasion-of-privacy claims. We reverse and remand.

I.
Dr. Johnson argues that the trial court erred in denying his motion for a judgment as a matter of law ("JML") on the Stewarts' invasion-of-privacy claims. Well-established principles govern our review of a motion for a JML:
"[T]he Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Regarding questions of fact, the ultimate question is whether the nonmovant has *547 presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present `substantial evidence' in order to withstand a motion for a JML. See § 12-21-12, Ala.Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala.1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126 (Ala. 1992)."
Delchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala.1999). We must apply these principles in reviewing the trial court's ruling on Dr. Johnson's motion for a JML.

II.
Dr. Stewart and Dr. Johnson are radiologists, who became partners in 1991. In January 1995, Dr. Johnson hired Surveillance Technologies, Inc. ("STI"), to investigate Dr. Stewart after Dr. Johnson became concerned about Dr. Stewart's behavior.
The investigation continued for approximately two and one-half years. The Stewarts did not learn of STI's investigation until August 1997, when an employee of STI sold Dr. Stewart what purported to be a copy of STI's investigative file in exchange for a $10,000 loan. On October 28, 1997, the Stewarts sued Dr. Johnson, stating invasion-of-privacy claims, as well as other claims, against him.
The case was tried before a jury. Dr. Stewart's copy of what was purported to be STI's investigative file was not received into evidence. However, Charles Frederick, the owner of STI and one of its investigators, did testify concerning the scope and manner of the investigation. Dr. Johnson moved for a JML on the invasion-of-privacy claims, both at the close of the Stewarts' case and at the close of all the evidence, and the trial court denied the motions. As previously mentioned, the jury returned verdicts on the Stewarts' invasion-of-privacy claims, awarding nominal and punitive damages, but it awarded no compensatory damages to either plaintiff. Dr. Johnson appeals, contending that he was entitled to a JML on the invasion-of-privacy claims.

III.
The parties agree that the threshold issue on appeal is whether the Stewarts presented substantial evidence indicating that Dr. Johnson violated the wrongfulintrusion branch of the invasion-of-privacy tort. This Court has defined the scope of that tort:
"In Phillips v. Smalley Maintenance Services, Inc. 435 So.2d 705 (Ala.1983), this Court adopted the Restatement (Second) of Torts definition of the wrongful-intrusion branch of the invasion-of-privacy tort:
"`One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be *548 highly offensive to a reasonable person.'
"Restatement (Second) of Torts, § 652B (1977). Comment c to § 652B states in part: `The defendant is subject to liability under the rule stated in this Section only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs.' The wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself, by discovering the plaintiff's private affairs through wiretapping or eavesdropping, or by some investigation into the plaintiff's private concerns, such as opening private mail or examining a private bank account. Restatement (Second) of Torts § 652B cmt. b; see Vernars v. Young, 539 F.2d 966 (3d Cir.1976) (holding that invasion of privacy occurred when mail addressed to plaintiff was opened by defendant without plaintiff's consent); see generally, W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 117, at 854-55 (5th ed.1984); 62 Am.Jur.2d Privacy §§ 51-57 (1990). Further, if the means of gathering the information are excessively objectionable and improper, a wrongful intrusion may occur. See Hogin v. Cottingham, 533 So.2d 525 (Ala.1988) (wrongful intrusion occurs when there has been abrupt, offensive, and objectionable prying into information that is entitled to be private)."
Johnston v. Fuller, 706 So.2d 700, 702 (Ala.1997). "This Court [has been] unwilling `to create a broad privacy action, with no metes and bounds, that would extend beyond [one's] dwelling, papers, and private records, creating unknown dangers to unsuspecting routine inquirers.'" Myrick v. Barron, 820 So.2d 81, 87 (Ala.2001), quoting Johnston v. Fuller, 706 So.2d at 703.
"[A] wrongful intrusion may be by physical intrusion into a place where the plaintiff has secluded himself," including, of course, the plaintiff's home. Johnston v. Fuller, 706 So.2d at 702. Here, the Stewarts allege that the investigation instigated by Dr. Johnson "invaded the privacy and emotional sanctity of the Stewarts by trespassing on their property." Stewarts' Brief, at 1. However, they do not cite any part of the record in support of that contention. Our independent review of the record reveals that Charles Frederick testified that "it was impossible to set up a surveillance on their residence."
The Stewarts also contend that the investigators "invaded [their] privacy and emotional sanctity ... by ... calling them on the telephone repeatedly using false pretenses." Stewarts' Brief, at 1. More particularly, they accuse the investigators of "calling them using false pretenses at all hours of the night and day." Stewarts' Brief, at 32. However, again, the Stewarts fail to cite any part of the record that supports their contention. Instead, the only citation to a part of the record dealing with telephone calls is a citation to Charles Frederick's testimony. When he was asked whether he ever telephoned the Stewart residence, he answered: "I don't recall. It's possible. Doing what's called a pretex[t] ... [j]ust to determine if they are at home." Obviously, Frederick's testimony does not provide substantial evidence of any wrongful intrusion.
Next, the Stewarts contend that the investigators "invaded [their] privacy and emotional sanctity ... by ... following them everywhere they went." Stewarts' Brief, at 1. In their words, "[t]hey were tailed and surveilled." Stewarts' Brief, at 41. However, once again, the Stewarts cite no part of the record that supports their contention that any surveillance was improperly intrusive upon their *549 "solitude or seclusion" or upon their "private affairs or concerns." Indeed, their citations to the record take us only to testimony indicating that surveillance began at the entrance to the subdivision where they lived. However, generally, the observation of another person's activities, when that other person is exposed to the public view, is not actionable under the wrongful-intrusion branch of the invasion-of-privacy tort. See I.C.U. Investigations, Inc. v. Jones, 780 So.2d 685 (Ala.2000). It is true "that the `wrongful intrusion' privacy violation can occur in a public place, when the matter intruded upon is of a sufficiently personal nature." Phillips v. Smalley Maint. Servs., Inc., 435 So.2d 705, 711 (Ala.1983). However, the Stewarts offered no evidence indicating that the investigation by STI intruded upon any such personal matter.[1]
The Stewarts argue that Dr. Johnson committed an actionable tort when he "provided private and personal information about [them] to a private investigator." Stewarts' Brief, at 8. Specifically, the Stewarts allege that "Johnson gave the investigators [their] names, addresses, telephone numbers, [S]ocial [S]ecurity numbers, vehicles and tag numbers, [and] copies of [their] checks." Stewarts' Brief, at 4. However, the Stewarts did not offer substantial evidence in support of those contentions.
Obviously, there can be "`no privacy in that which is already public.'" Abernathy v. Thornton, 263 Ala. 496, 498, 83 So.2d 235, 237 (1955) (quoting Hepburn, Cases on Torts, p. 504). Therefore, public information, such as a person's name, address, and telephone number, or the make and model of the vehicle he drives and its license plate number, cannot form the basis for an invasion-of-privacy claim. While it can be argued that a person has a privacy interest in his or her credit-card account numbers, the Stewarts cite no parts of the record supporting their contention that Dr. Johnson gave the investigators any credit-card account number belonging to the Stewarts. In fact, Dr. Johnson denied giving any credit-card account number to STI, and Charles Frederick simply did not recall whether Dr. Johnson had given him any credit-card account number.
While the Stewarts allege that Dr. Johnson gave the investigator copies of their personal checks, Charles Frederick testified only that "[i]t seems like" he was given copies of their checks. That testimony is indicative of nothing more than a mere possibility, which does not constitute substantial evidence that copies of the Stewarts' personal checks were provided to him by Dr. Johnson. Also, we note that the Stewarts do not argue that the information printed on the checks is private.
Dr. Johnson admits that he provided the Stewarts' Social Security numbers to the investigator. As stated by the Stewarts, "Johnson obtained their [S]ocial [S]ecurity numbers somehow and did give them to the investigator." Stewarts' Brief, at 33 (emphasis added). However, for all that appears in the record, the Stewarts voluntarily furnished their Social Security numbers to Dr. Johnson, or voluntarily furnished the information to other persons, who then provided Dr. Johnson with the numbers. A wrongful-intrusion claim cannot be based upon information voluntarily given to the defendant by the plaintiffs or *550 upon the defendant's receipt of information already known to others. See Myrick v. Barron, supra, and Johnston v. Fuller, supra.
Finally, the Stewarts contend that Dr. Johnson invaded their privacy when he had STI perform "asset checks [on them], includ[ing] private, personal banking information, stock information and property information." Stewarts' Brief, at 5. Specifically, they contend that "[i]t is totally undisputed that the investigators did procure and produce to Johnson the personal and private banking account information on Donald Stewart and Janet Stewart. This is the private information that is actionable." Stewarts' Brief, at 32. It is clear that "[a] wrongful intrusion may be by ... some investigation into the plaintiff's private concerns, such as ... examining a private bank account." Johnston v. Fuller, 706 So.2d at 702. Therefore, we must determine whether the Stewarts offered substantial evidence of an examination of their "private, personal banking information, stock information [or] property information."
As previously discussed, STI's investigative reports were not received into evidence. The only testimony concerning the scope of the investigation into the Stewarts' assets was the testimony of Charles Frederick, who testified: "A basic asset check could just be property, vehicles, things like that. A full-blown asset check ... can involve everything, bank accounts, stocks, bonds, offshore accounts." Contrary to the Stewarts' allegations, Frederick never testified that he obtained any information concerning any stock or other property owned by the Stewarts. While he did admit that STI had obtained some information concerning the Stewarts' checking accounts, Frederick did not provide any description of that information or the manner in which it was obtained. It would be purely speculative to conclude that STI had examined any private bank account or that it otherwise had obtained any private financial information. For all that appears in the record, STI obtained, and provided to Dr. Johnson, only general information already known to others. Such information would not be protected by the limited scope of the wrongful-intrusion branch of the invasion-of-privacy tort. See Johnston v. Fuller, 706 So.2d at 702-03.

IV.
For the foregoing reasons, we conclude that the Stewarts did not offer substantial evidence in support of their invasion-of-privacy claims against Dr. Johnson. Therefore, the trial court erred in denying Dr. Johnson's motion for a JML. The judgment of the trial court is reversed, and the case is remanded for the entry of an order consistent with this opinion.
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
MOORE, C.J., and JOHNSTONE, J., dissent.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. In my opinion the record contains substantial evidence that Dr. Johnson invaded the Stewarts' privacy at least by wrongfully obtaining and disclosing their checks. While the evidence is not clear and convincing, it is sufficient to support the nominal damage award of one dollar for each plaintiff.
Although Dr. Johnson denies providing the checks to the investigator, Dr. Johnson admits providing the investigator the rest of the information to start the investigation. In addition, the investigator testified:

*551 "Q. Were you at any time given copies of checks, personal checks out of the checking accounts that belonged to Janet Stewart or Donald Stewart?
"A. It seems like it. I'm not sure.
"Q. Do you knowsame question. Do you know if you were given similar-type checks on M.B. or S.B.?
"A. It seems like it. I'd have to go back and look.
"Q. If you were given those checks who would have given those checks to you?
"A. It would have been Dr. Johnson."
Substantial evidence is defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989) (citation omitted). This evidence meets this test.
The account number of the drawer of a check, the name of the payee, and the amount of the check are private information for knowledge by or disclosure to only the drawer, any co-owner of the account, the drawee, any holders of the check, and persons authorized by them to assist in the delivery and negotiation of the check certainly not for disclosure to people like the investigator in this case who are hostile to the drawer. Cf. Johnston v. Fuller, 706 So.2d 700, 702 (Ala.1997); Phillips v. Smalley Maint. Servs., Inc., 435 So.2d 705 (Ala.1983)(adopting Restatement (Second) of Torts § 652B (1977) defining and explaining invasion of privacy); and Comment b to Restatement § 652B (the wrongful invasion "may be by some other form of investigation or examination into his private concerns, as by opening his private and personal mail, searching his safe or his wallet, examining his private bank account, or compelling him by a forged court order to permit an inspection of his personal documents"). Dr. Johnson does not claim any status that would have authorized him to have obtained or to have possessed the Stewarts' checks or to have provided such checks to the investigator, and the law does not supply any presumption or inference of any such status.

On Application for Rehearing
WOODALL, Justice.
Janet Stewart and Donald Stewart filed an application for rehearing, which we are overruling. We write solely for the purpose of responding to the Chief Justice's statement, in his dissent, that this Court on original submission "overlooked" facts in reaching its decision.
It is fundamental that the parties have the duty to include in their briefs a statement of all facts relevant to the issues presented for this Court's review. Indeed, Ala. R.App. P. 28 makes that duty crystal clear. Initially, the appellant's brief must include "[a] full statement of facts relevant to the issues presented for review, with appropriate references to the record." Rule 28(a)(7) (emphasis added). Rule 28(b) requires the appellee to conform to the requirements of subdivision (a)(7), if "the appellee is dissatisfied with [the] statements as made by the appellant." Also, the argument of each party must contain "the contentions of the [party] with respect to the issues presented, and the reasons therefor, with citations to the ... parts of the record relied on." Rule 28(a)(10) (emphasis added). Where the appellee makes no correction or addition to the appellant's statement of the facts, "[t]he statements made by appellant ... will be taken to be accurate and sufficient for decision." Taylor v. First Nat'l Bank of Tuskaloosa, 279 Ala. 624, 628, 189 So.2d 141, 144 (1966). Obviously, "`this Court is not under a duty to search the record in *552 order to ascertain whether it contains evidence that will sustain a contention made by either party to an appeal.'" Brannan & Guy, P.C. v. City of Montgomery, 828 So.2d 914, 920 (Ala.2002) (quoting Totten v. Lighting & Supply, Inc., 507 So.2d 502, 503 (Ala.1987)).
As noted in this Court's opinion on original submission, the Stewarts in their briefs made arguments addressing two issues without citing any part of the record in support of their contentions. With regard to those issues, we were entitled to assume that the Stewarts were satisfied with Dr. Johnson's statement of the facts and to resolve the legal issues in light of those facts. With regard to the other issues, we properly considered those facts supported by appropriate references to the record, in both parties' briefs, before reaching our decision.
In their application for rehearing, the Stewarts accuse this Court of "fail[ing] to consider numerous facts, testimony, and evidentiary exhibits." However, the facts the Stewarts accuse us of "fail[ing] to consider" were only properly brought to us, for the first time, in their application for rehearing. The purpose of an application for rehearing is not to cure deficiencies in a party's earlier brief. Indeed, an applicant for rehearing is not entitled to make new arguments based upon facts properly submitted to this Court only after its decision, because "[t]he well-settled rule of this Court precludes consideration of arguments made for the first time on rehearing." Water Works & Sewer Bd. of the City of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002) (opinion on rehearing).
APPLICATION OVERRULED.
HOUSTON, SEE, LYONS, BROWN, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., concurs specially.
MOORE, C.J., dissents.
JOHNSTONE, Justice (concurring specially to overrule the application for rehearing).
While I maintain my dissent to the main opinion on original submission, I concur in overruling the application for rehearing because, in my opinion, the Justices on this Court did not, on original submission, overlook any facts we were supposed to consider, each of us did the best he or she could to apprehend and to apply the applicable law, and the application for rehearing, while diligently prepared, does not create any substantial likelihood of a change in the original judgment of this Court.
MOORE, Chief Justice (dissenting).
I must dissent from the Court's decision to overrule the application for rehearing in this case. On October 18, 2002, this Court reversed a judgment entered on a jury verdict in favor of Donald Stewart and Janet Stewart and against Dr. Donald Johnson because the Court concluded that "the Stewarts did not offer substantial evidence in support of their invasion-of-privacy claims against Dr. Johnson." Johnson v. Stewart, 854 So.2d 544, 550 (Ala.2002). If the Court had before it only those facts presented in the Court's opinion on which to base its decision, then the result in that opinion would be justified.
However, in their application for rehearing the Stewarts have pointed out several conclusions in the Court's opinion that are contradicted by facts in the record. For instance, the Court concluded that the Stewarts did not present substantial evidence showing that Dr. Johnson "`invaded the privacy and emotional sanctity of the Stewarts by trespassing on their property.'" *553 854 So.2d at 548 (quoting the Stewarts' brief at 1). Dr. Stewart explicitly testified, however, that he noticed "suspicious cars had been coming around our house slow.... We noticed cars parked in the back drive to start with."
The Court's opinion found that there was not substantial evidence indicating that investigators hired by Dr. Johnson had invaded the Stewarts' privacy through repeated telephone calls made under false pretenses. Nevertheless, Dr. Stewart testified about repeated instances where the caller would hang up when he or Mrs. Stewart answered the telephone and other suspicious telephone calls.
The Court found that there was not substantial evidence to show that the investigators hired by Dr. Johnson had examined the Stewarts' private banking information, their stock portfolios, and their other assets. However, Charles Frederick, the owner of, and lead investigator for, the agency that performed the investigation of the Stewarts for Dr. Johnson, testified at trial that the reason for the investigation was to see if Dr. Stewart had stolen money from the medical practice in which he and Dr. Johnson were partners. Frederick then stated that if one is looking for money that has been hidden, a "full-blown" asset check is performed, and that asset check would include investigating bank accounts, stocks, and other assets. No evidence that Dr. Stewart took money from the partnership was ever presented. Moreover, Dr. Johnson admitted in testimony that during the investigation Frederick faxed him a report containing information regarding Dr. Stewart's bank account, although he did not elaborate on what information the report contained. On rehearing, the Stewarts point to admissions by Frederick at trial and to exhibits admitted at trial, which show that Frederick obtained information on the Stewarts' checking accounts. The Stewarts' rehearing application cites several other parts of the record that contain evidence indicating that the investigators invaded their privacy.
Rule 40(b), Ala. R.App. P., states that an application for rehearing "must state with particularity the points of law or the facts the applicant believes the court overlooked or misapprehended." (Emphasis added.) The Stewarts did exactly that in their application for rehearing, citing to testimony in the record of several instances of the invasion of their privacy directly contrary to the conclusions reached by the Court in its October 18, 2002, opinion. Given that this Court should look at the evidence in a light most favorable to the Stewarts and entertain all reasonable inferences that the jury was free to draw from the evidence presented at trial, see, e.g., Motion Industries, Inc. v. Pate, 678 So.2d 724 (Ala. 1996), the Court's failure to note those facts warrants a rehearing. Indeed, this case is suitable for granting rehearing because on original submission this Court clearly disregarded facts presented by the Stewarts that went unrefuted by Dr. Johnson.
In its opinion on application for rehearing, the Court implies that the facts presented in the Stewarts' rehearing brief are facts that have never before been brought to the attention of the Court. 854 So.2d at 552. It should be noted, however, that all of the facts the Stewarts wish the Court to reconsider on rehearing were presented in their original brief on appeal. With the exception of the Stewarts' trespassing charge against the defendant, Dr. Johnson and Florence Radiology Associates never denied those facts; rather, they argued that those facts did not constitute enough evidence to sustain an invasion-of-privacy verdict. Instead of taking the Stewarts' facts as true and determining whether *554 those facts "added up" to an invasion of privacy, this Court in its October 18, 2002, opinion merely observed that the Stewarts had not cited "any part of the record," 854 So.2d at 548, as support for those facts and maintained that there was no need to address them.
While I certainly agree that parties should make "appropriate references to the record," Rule 28, Ala. R.App. P., when relating the relevant facts, this requirement does not negate this Court's duty to review the record concerning relevant facts if we have doubts about the veracity of those facts; indeed, we should have no doubt when facts presented by one party are not refuted by the other party. The Court even stated in its original opinion that an "independent review of the record," 854 So.2d at 548, had been conducted, but that independent review evidently failed to verify the facts presented by the Stewarts in their brief on original submission. While references to the record may be "appropriate," they are not "necessary" when the facts for which support is sought are not disputed.
In my view, the Stewarts have drawn the Court's attention to facts overlooked in the original appeal, facts that bear directly on the Court's holding that the Stewarts failed to present substantial evidence of an invasion of privacy. This Court should be cautious whenever it exercises its power to reverse a trial court's judgment, and the Stewarts have provided ample reason for this Court to review its reversal of the judgement of the trial court in this case. This Court should have granted rehearing; I therefore dissent.
NOTES
[1] "Even in a public place, however, there may be some matters about the plaintiff, such as his underwear or lack of it, that are not exhibited to the public gaze; and there may still be invasion of privacy when there is intrusion upon these matters." Restatement (Second) of Torts § 652B cmt. c (1977).