[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 977 
Alabama Power Company ("APCo") appeals from a judgment entered on a jury verdict, awarding David Moore compensation for injuries he sustained when he came into contact with an electrified guy wire, as well as punitive damages. We reverse and remand.
 I. Factual Background
On the evening of February 25, 2001, Moore drove his automobile to a restaurant in Montgomery. He found a marked parking space at the edge of the pavement of the parking lot of the restaurant. However, because there was no curb at the edge of the parking lot, Moore drove his car a few feet beyond the edge of the pavement onto a flat, grassy area. He left the car and went into the restaurant.
After dining, Moore returned to his car. In attempting to drive out of the parking lot, however, he noticed for the first time that his car was stuck on something. Upon inspection, Moore discovered that he had inadvertently parked the car atop the anchored end of an unmarked guy wire, which supported an electrical pole owned and maintained by APCo, and that his car was hung on the guy wire. Using his own hand tools, Moore broke the guy wire from its anchor. Loosed from its anchor, the guy wire sagged and touched an electrified "stinger wire" that ran a few inches beneath the guy wire near the top of the electrical pole. Moore was electrocuted when the electricity conducted by the stinger wire traveled down the guy wire while Moore was holding the guy wire in his hand.
Moore sued APCo and others, alleging negligence and wantonness, and a jury trial began on April 21, 2003.[1] At the close of all the evidence, APCo moved for a judgment as a matter of law ("JML"). More specifically, it contended that Moore was guilty of contributory negligence as a matter of law for breaking the guy wire. It further contended that the intentional destruction of the guy wire was unforeseeable and that Moore's conduct constituted an intervening cause, which broke the chain of proximate causation. The trial court denied the motion and submitted the negligence and wantonness claims to the jury. The jury awarded Moore $1,000,000 compensatory damages and $2,000,000 punitive damages. The trial court entered a judgment in favor of Moore in the amount of $2,200,000[2] and denied APCo's renewed motion for a JML, a remittitur, or, in the alternative, a new trial. APCo appealed, contending that the trial court erred in denying its motion for a JML.
 II. Standard of Review
The standard of review of the denial of a motion for a JML is well established: *Page 978 
 "`[T]he Court uses the same standard the trial court used initially in granting or denying a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case or the issue to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). For actions filed after June 11, 1987, the nonmovant must present "substantial evidence" in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Motion Industries, Inc. v. Pate, 678 So.2d 724
(Ala. 1996). Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992).'"
Johnson v. Stewart, 854 So.2d 544, 546-47 (Ala. 2002) (quotingDelchamps, Inc. v. Bryant, 738 So.2d 824, 830-31 (Ala. 1999)).
APCo does not contend that it was not negligent in its maintenance of the electrical pole and the guy wire. Instead, APCo argues that Moore's injuries proximately resulted, not from APCo's negligence, but from Moore's intentional, unforeseeable breaking of the guy wire. APCo argues that "Moore's intentional breaking of the guy wire constitutes an independent, intervening act that severs the chain of proximate causation and requires a [JML] for APCo on the wantonness and negligence claims." APCo's brief, at 39.
 III. Proximate Cause
At the outset, we note that Moore suggests no theory of his own as to how the guy wire broke, and his brief is ambivalent regarding the extent of his role in breaking it. However, the testimony he presented at trial — Moore's own testimony and that of his expert — was clear and undisputed.
The guy wire was composed of six strands of galvanized wire braided to form a cable. Attached to the bottom of the cable were three strands of galvanized wire, several inches long. These three strands were looped through the "eye" of the guy-wire anchor to form a "preformed guy grip" ("the grip"). The anchor was implanted in the ground. Thus, the guy wire was connected to the anchor by the three strands of the guy grip.
Moore's expert witness, Roger Bybee, testified that, based on his examination of the guy grip, it was his opinion that Moore had used his hand tools to break "two, if not all three, of the strands of the preformed guy grip." Indeed, Moore testified that he intentionally bent the wires forming the guy grip with his hand tools until the wires broke and that he admitted to rescue workers and medical personnel who arrived on the scene the night of the accident that he had broken the wires. Viewing the facts in the light most favorable to Moore, the testimony and exhibits conclusively establish that Moore broke the guy grip while attempting to free his car from the guy wire, causing the guy wire to sag and touch the electrified "stinger wire." Moore offered no evidence indicating that the guy grip was damaged when he inadvertently parked his car atop the anchored end of the guy wire. Thus, the dispositive *Page 979 
issue is whether Moore's breaking of the guy grip was foreseeable as a matter of law.
"`The proximate cause of an injury is that cause which, in the natural and probable sequence of events, and without the intervention or coming in of some new or independent cause, produces the injury, and without which the injury would not have occurred.'" Hicks v. Vulcan Eng'g Co., 749 So.2d 417, 424 (Ala. 1999) (quoting trial court's jury charge). "[I]f a new, independent act breaks the chain of causation, it supersedes the original act, which thus is no longer the proximate cause of the injury." Riojas v. Grant County Pub. Util. Dist.,117 Wash.App. 694, 697, 72 P.3d 1093, 1095 (2003). "[A]n [act] is superseding only if it is unforeseeable. A foreseeable intervening [act] does not break the causal relationship between the defendants' actions and the plaintiffs' injuries." Kelly v. M. TriggEnters., Inc., 605 So.2d 1185, 1190 (Ala. 1992) (emphasis added).
"Ordinarily, it is a jury question whether consequences of an act are reasonably foreseeable, but, in a proper case, it is a legal question." Sly v. South Cent. Bell Tel. Co.,387 So.2d 137, 140 (Ala. 1980). "When . . . the facts of the cause are not conflicting, and where there can be no reasonable difference of opinion as to the conclusion to be reached upon them, those questions are for the decision of the court as a matter of law."Hercules Powder Co. v. DiSabatino, 55 Del. 516, 527,188 A.2d 529, 535 (1963). "`[F]oreseeability must be based on theprobability that harm will occur, rather than the barepossibility.'" Ex parte Wild Wild West Soc. Club, Inc.,806 So.2d 1235, 1241 (Ala. 2001) (quoting 65 C.J.S. Negligence § 4(3) (1966) (emphasis added)).
"[T]he line is drawn to terminate the defendant's responsibility" for injuries of the unanticipated sort resulting from "intervening causes which could not reasonably be foreseen, and which are no normal part of the risk created." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 44, at 312, 311 (5th ed. 1984). Among those injuries are those that result from "intentional or criminal acts against which no reasonable standard of care would require the defendant to be on guard," such as the "destructive meddling with property." Id.
at 313 (emphasis added).
Neither party has cited a case directly on point. However,DiSabatino, supra, cited by APCo, supports APCo's position. In that case, a worker who was installing a sewer line near a power pole owned and maintained by Hercules Powder Company ("Hercules") was electrocuted when he picked up one of two guy wires that had been deliberately cut away from its anchor by an unknown third party. 55 Del. at 521, 188 A.2d at 532. In an action by the worker's widow against Hercules, the Delaware Supreme Court concluded that, although Hercules knew that construction workers were operating near the power pole, "the cutting of the guy wires" was "an unforeseeable cause," which Hercules was not "bound in the exercise of due care to provide against it happening," and held that Hercules was entitled to a directed verdict and "judgment in its favor." 55 Del. at 527,188 A.2d at 535. The court explained: "We would suppose that foresight . . . would have led to the . . . conclusion . . . that no interloper would intrude himself on the scene and deliberately sever the guy wires." 55 Del. at 526, 188 A.2d at 535. It concluded: "In view of the fact that the testimony is to the effect that guys rarely, if ever, become loosened, absent an abnormal weather condition, we think an installation providing complete safety when nottampered with discharged *Page 980 
Hercules' duty of providing safety against all foreseeable risks." Id. (emphasis added).
The testimony in this case regarding the infrequency of guy-wire separation was similar to the testimony in DiSabatino.
Although APCo conceded that a guy wire can, and occasionally does, break through human agency, Gerald Azar, a lineman for APCo, testified that it is "an uncommon occurrence" for a guy wire to become "detached from the anchor." Frederick Brooks, a witness tendered by APCo as an expert in the field of "forensic engineering," testified:
 "Q. [By APCo's counsel] In your judgment or opinion, was it foreseeable to a utility such as Alabama Power that someone would take tools like this, break loose its guy wire, vandalize its equipment, and cause the guy wire to spring back into the pole?
 "A. [By Brooks]. No, sir. Nobody is going to foresee that someone is going to go in and take tools and try to basically cut a guy wire. That's almost unheard of. In fact, I've never heard of it happening."
(Emphasis added.)
Foreseeability is not based on "bare possibilit[ies]." Exparte Wild Wild West Social Club, Inc., 806 So.2d at 1241. APCo could not reasonably have foreseen the kind of harm that resulted from the intentional destruction of its equipment, the breaking of the guy grip being no more than a "bare possibility." Thus, we hold that the intentional conduct of Moore, who manually bent, and ultimately broke, the wires of the guy grip while attempting to remove the wire from beneath his automobile, superseded any alleged negligence or wantonness of APCo.
 IV. Summary
For the foregoing reasons, the trial court erred in denying APCo's motion for a JML. The judgment is, therefore, reversed, and this cause is remanded for the entry of a judgment in favor of APCo.
REVERSED AND REMANDED.
NABERS, C.J., and HOUSTON, SEE, LYONS, HARWOOD, and STUART, JJ., concur.
JOHNSTONE, J., dissents.
[1] During the trial, Moore settled with all the defendants except APCo. Therefore, this appeal involves no issues or claims other than those against APCo.
[2] The $800,000 reduction in the judgment from the amount of the verdict reflected a credit for the amount of Moore's settlement with the other defendants.