BOLIN, Justice.
Galaxy Cable, Inc., doing business as Galaxy Cablevision (“Galaxy”), appeals from a judgment entered on a jury verdict in favor of Pamela Davis, as next friend of Benjamin Drake Davis, a minor, on Pame *96 la’s claims alleging negligence and wantonness. We affirm in part and reverse in part.

Facts and Procedural History

On January 21, 2005, then 11-year-old Benjamin was playing at Tammy Thomas’s house with Thomas’s minor son, Tyler. Thomas’s house was owned by her father, Sammy McCullar. The property includes a basketball court, which is located near a power line. Benjamin and Tyler were playing basketball and, during the game, Benjamin was injured when he fell into an exposed and frayed metal guy wire, which was supporting a utility pole. Benjamin’s leg was lacerated by the frayed wire. The utility pole belonged to Alabama Power Company, and Galaxy had a lease agreement with Alabama Power that allowed it to attach one of its cables to the pole.
On January 18, 2007, Pamela sued Thomas, McCullar, Galaxy, and Alabama Power, alleging negligence and wantonness. Subsequently, Pamela moved to dismiss Thomas and McCullar as defendants; her motion was granted. Alabama Power was dismissed as a defendant immediately before the trial began, leaving only Galaxy as a defendant.
At trial, Benjamin testified that he had been invited to play with Tyler on January 21, 2005. The boys were playing basketball between 4:30 p.m. and 5:30 p.m. when Benjamin went to retrieve the ball and tripped over the guy wire, lacerating his leg. Benjamin testified that it was still light outside when the incident occurred. He stated that no weeds or grass obstructed his view of the guy wire. Benjamin testified regarding the pain associated with his injury.
Pamela testified regarding the extent of Benjamin’s injury. Tyler also testified regarding the incident. Tammy Thomas testified that the basketball court was set up on a lawn that she mowed and maintained. Thomas said that she mowed around the guy wire with her riding lawn mower when she mowed the area and that she sprayed herbicide on the ground around the guy wire to keep vegetation down during the seven years she had lived on the property. She stated that she never hit the guy wire with her riding lawnmower and that no cars ever parked near the guy wire. Thomas stated that, before this accident, no one had ever run into the guy wire. Thomas stated that she had never noticed a problem in the guy wire before the incident. She stated that, on the day of the accident, the steel guy wire was frayed at the bottom near the ground and that a plastic yellow guard that would usually cover the bottom of the guy wire was pushed up to the top of the guy wire. Thomas stated that she had never noticed the yellow guard before and that she did not know how long it had been at the top of the guy wire.
Sammy McCullar testified that he visited his property every other day and that he had never seen the guy wire “unbraid-ed,” as it was on the day of the accident. He stated that he thought it must have been unbraided for only a short time because he would have noticed if it had been unbraided for a long time. When McCul-lar was asked if he had ever seen Tammy Thomas cut the grass next to the guy wire, he stated: “You can’t cut grass up close to a guy wire, because it will knock you off of the lawn mower.”
Gregory Berthaut, a regional manager for Galaxy, testified as to how guy wires are installed, why they are installed, and the procedures followed when complaints about guy wires are made. Berthaut explained that a guy wire is made of multiple strands of wire that are braided together and that a yellow guy-wire guard is placed over the bottom of the guy wire near the ground and sometimes secured to a “pre *97 form” at the bottom of the guy wire to prevent the yellow guy-wire guard from moving. He stated that the plastic guy-wire guard is yellow so it is visible and someone could avoid it and so that people would avoid hitting the guy wire with a lawn mower when they are mowing in the vicinity of the guy wire. Berthaut was asked if Galaxy required that yellow guards be placed over guy wires, and he stated: “It is not in writing required. Any that you install now, you do. But there’s wires that have been out for 20, 25 years that don’t have these on them, both telephone, power, and cable.” He stated that someone would have to physically move a yellow guy-wire guard in order for the guard to be at the top of the utility pole. Berthaut also stated that over time ultraviolet rays weaken the yellow plastic guards.
Berthaut further testified that Galaxy performs annual leakage “ride-outs” as required by the Federal Communication Commission, to make sure that communication signals do not interfere with aircraft communications. During the annual ride-out inspections, the Galaxy employees rarely get out of their vehicles. He stated that to conduct a “ride-out” a technician rides around to look at the top of the poles and that no technician had reported that the yellow guard was at the top rather than the bottom of the guy wire attached to the pole that is the subject of this case. Berthaut stated that he did not know if Galaxy was the entity that had installed the yellow guard on the pole near Thomas’s house because Galaxy had purchased the cable system from another company. He further testified that, if Galaxy employees are out on a service call and they see a problem, they usually correct it immediately. Berthaut testified that when Galaxy employees went to repair the guy -wire after Benjamin’s injury, Alabama Power had already repaired it.
After Berthaut’s testimony, Pamela rested her case. Galaxy filed a motion for a judgment as a matter of law (“JML”). Galaxy read from portions of its written motion for a JML and discussed the arguments raised in the motion. Galaxy argued that Benjamin was a social guest of Tammy Thomas and that it owed Benjamin no duty, that there was no evidence of negligence or wantonness, that Galaxy had no notice of the allegedly dangerous condition, that the condition was open and obvious, that someone had intentionally placed the yellow guy-wire guard at the top of pole, and that a yellow guard is not required.[1]
In response to Galaxy’s motion for a JML, Pamela argued that Galaxy had raised several defenses in the motion that it had not raised in its answer and that those defenses had been waived. Pamela argued that the only affirmative defenses raised in Galaxy’s answer were assumption of the risk and contributory negligence. Pamela argued that there was ample evidence to support both the negligence and the wantonness claims. The trial court denied Galaxy’s motion for a JML. Galaxy then recalled Berthaut and Benjamin to testify.
*98 The trial court charged the jury. Following deliberations, the jury returned a verdict in favor of Pamela in the amount of $30,000 in compensatory damages and $120,000 in punitive damages. Galaxy then filed a posttrial motion for a JML. The trial court held a hearing on the motion, but never ruled on the motion, which was denied by operation of law. Galaxy timely filed this appeal.

Discussion

Galaxy argues that the jury verdict is not supportable; it argues that no duty was imposed on it because no one could have superior knowledge of what was an open and obvious defect.
The duty owed by a landowner[2] to an injured party depends upon the status of the injured party in relation to the landowner’s land, i.e., is the injured party a trespasser, a licensee, or an invitee. A landowner owes a duty to a trespasser not to wantonly or intentionally injure him by dangers known by the landowner. A person who enters land with the landowner’s consent to bestow some material or commercial benefit is an “invitee,” and a landowner owes an invitee the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee. An entrant who is on the landowner’s property with the landowner’s consent or as his social guest, but with no business purpose, is a “licensee,” to whom the landowner owes a duty not to willfully, wantonly, or negligently injure him.
With regard to its argument that it owed no duty to Benjamin because this condition was open and obvious, Galaxy cites Dolgencorp, Inc. v. Taylor, 28 So.3d 737 (Ala.2009), Ex parte Neese, 819 So.2d 584 (Ala.2001), Browder v. Food Giant, Inc., 854 So.2d 594 (Ala.Civ.App.2002), Alabama Power Co. v. Williams, 570 So.2d 589 (Ala.1990), and Jones Food Co. v. Shipman, 981 So.2d 355 (Ala.2006), all of which involve an invitee.
In its brief, Galaxy states:
“The Court and parties wrestled with the premises liability categories, and although the plaintiff was not so categorized, as Galaxy Cable never invited or permitted his presence, Galaxy Cable nevertheless urged the imposition of the comparable lack of duty. We urge the Court to determine the duty to Galaxy Cable in this case with reference to the non-party owner and occupier of the land, the dominant estate, which means the plaintiff is a social guest was a licensee.”
(Galaxy’s brief, p. 22.) The record indicates that the trial court did not charge the jury regarding a landowner’s duty nor did the court charge the jury regarding Benjamin’s status. Moreover, following the jury charges, counsel for Galaxy stated:
“Okay, Judge. And that’s — that’s all. I agree that we shouldn’t pigeon hole as far as licensee, trespasser, invitee, social guest, et cetera, et cetera.”
Clearly, Galaxy acquiesced to the trial court’s failure to charge the jury on any applicable premises-liability duty owed by Galaxy; therefore, any error as to this issue was invited by Galaxy. See Dorsey v. State, 881 So.2d 460 (Ala.Crim.App.2001) (defendant failed to object to court’s method of remedying a Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), violation and acquiesced in the method), reversed on other grounds, 881 *99 So.2d 533 (AIa.2003). Additionally, the transcript indicates that Galaxy argued before the trial court in its motion for a JML that Benjamin was a social guest, i.e., a licensee. Accordingly, we decline to now hold that Benjamin was an invitee.
Although Benjamin was injured on land belonging to another, which land was the subject of an easement, the parties did not agree as to Benjamin’s status or the duty owed by the landowner, and Galaxy waived the issue whether it owed Benjamin any specialized duty. Thereafter, the trial court charged the jury as to the general duty of care owed in a negligence action, as follows:
“Negligence is the failure to discharge or perform a legal duty owed to the other party. The duty owed by the defendant to the plaintiff was to exercise reasonable care and not to injure or damage the plaintiff. That is to exercise such care as a reasonably prudent person would have exercised under the same or similar circumstances.”
We note that the trial court did not charge the jury regarding open and obvious conditions. Galaxy fails to argue that the trial court should have charged the jury as to this affirmative defense. Failure by an appellant to argue an issue in its brief waives that issue and precludes it from consideration on appeal. Ex parte Riley, 464 So.2d 92 (Ala.1985). Because the jury was not charged regarding open and obvious conditions and because Galaxy does not on appeal raise this issue as error by the trial court, there is no need to address the merits of Galaxy’s argument that the damaged guy wire constituted an open and obvious condition.
Galaxy argues that because Pamela failed to present any evidence of industry standards, electrical codes, ordinances, manuals, or other technical material that Galaxy violated, Pamela failed to present evidence indicating that Galaxy owed a duty to Benjamin. We recognize that evidence of a defendant’s compliance with applicable industry standards may be relevant and admissible for purposes of determining whether a defendant breached a duty of care it owed an injured plaintiff. See Standard Plan, Inc. v. Tucker, 582 So.2d 1024 (Ala.1991) (holding that expert’s opinion as to insurance-industry standard was admissible as long as a proper foundation was laid); King v. National Spa & Pool Inst., Inc., 570 So.2d 612 (Ala.1990) (holding that evidence that manufacturer complied with or did not comply with industry standards was admissible as evidence of due care or lack of due care). However, the failure to present evidence of industry standards or codes does not mean that a plaintiff has failed to present evidence that the defendant owed the plaintiff a duty. The duty of care is an objective standard determined by what an ordinary careful and prudent person would have done under the same or similar circumstances. Standifer v. Pate, 291 Ala. 434, 439, 282 So.2d 261, 266 (1973) (“Negligence is the want of such care as an ordinary or reasonably prudent and careful man would exercise under similar circumstances.”).
Next, Galaxy argues that Alabama Power Co. v. Moore, 899 So.2d 975 (Ala.2004), requires reversal on the issue of causation because, it says, in this case, it is obvious that the guy wire had been tampered with and that that had caused Benjamin’s injury. In Moore, 899 So.2d 975, a restaurant patron inadvertently parked his automobile atop the anchored end of a guy wire, which supported an electrical pole owned by Alabama Power Company. His car became hung on the guy wire, and, using his own hand tools, the patron broke the guy wire from its anchor. The guy wire then sagged and touched an electrified “stinger wire” that ran a few inches be *100 neath the guy wire near the top of the electrical pole. The patron was electrocuted when the electricity conducted by the stinger wire traveled down the guy wire while the patron was holding the guy wire in his hand. This Court held that the intentional conduct of the patron superseded any alleged negligence or wantonness of Alabama Power because Alabama Power could not reasonably have foreseen the kind of harm that resulted from the intentional destruction of its equipment. Moore is easily distinguishable from the present case.
A foreseeable intervening act does not break the causal relationship between the defendant’s action and the plaintiffs injuries.
“ ‘[T]he line is drawn to terminate the defendant’s responsibility’ for injuries of the unanticipated sort resulting from ‘intervening causes which could not reasonably be foreseen, and which are not normally part of the risk created.’ ... Among those injuries are those that result from ‘intentional or criminal acts against which no reasonable standard of care would require the defendant to be on guard,’ such as ‘destructive meddling with property.’ ”
Moore, 899 So.2d at 979 (quoting Prosser and Keeton on the Law of Torts § 44, at 312, 311 (5th ed. 1984)). In Moore, the plaintiff intentionally cut the guy wire and was injured. Here, someone moved the yellow protective guard, which allowed the braided wires on the guy wire to be exposed and to become frayed, and when Benjamin fell over the wires, his leg was lacerated. There was testimony that the plastic yellow guards deteriorate and that there are guy wires without yellow guards that have been that way 20 years. Ber-thaut’s testimony, which Galaxy cites as evidence that someone intentionally moved the yellow guard to the top of the wire, where it was on the day of the incident, indicates that the only way the yellow guard could have been moved all the way to the top of the guy wire was if someone had a “bucket” truck and that it would be hard to move it even if someone had a ladder. Berthaut’s testimony indicates that the children playing basketball near the guy wire would not have moved the yellow guy-wire guard to the top of the wire. Accordingly, Moore does not require a reversal here.
Next, Galaxy argues that the trial court erred in finding that Pamela presented clear and convincing evidence of wanton conduct as required by § 6-11-20, Ala.Code 1975, for an award of punitive damages. “ ‘An appellate court, when reviewing a ruling on a motion for a judgment as a matter of law, uses the same standard the trial court used initially in granting or denying the motion.’ ” Jim Walter Homes, Inc. v. Nicholas, 843 So.2d 133, 135 (Ala.2002) (quoting Bell v. T.R. Miller Mill Co., 768 So.2d 953, 956 (Ala. 2000)). Ex parte Norwood Hodges Motor Co., 680 So.2d 245 (Ala.1996), sets out the standard a trial judge is to use when a defendant objects to the submission of the question of punitive damages to the jury: “[W]hether there was evidence of such quality and weight that a jury of reasonable and fair-minded persons could find by clear and convincing evidence that the defendant consciously or deliberately engaged in [wantonness].” 680 So.2d at 249.
Specifically, Galaxy argues that wantonness requires knowledge of the existing conditions and that McCullar and Thomas (the owner and occupier of the property, respectively) did not have knowledge of any danger and that Galaxy also lacked knowledge of any danger. “The lack of notice — by any of the witnesses or to Galaxy Cable — refutes the conscious *101 ness required to support the wantonness count and punitive damages.”
“' “Wantonness” has been defined by this Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. To prove wantonness, it is not essential to prove that the defendant entertained a specific design or intent to injure the plaintiff.’
“Alfa Mut. Ins. Co. v. Roush, 723 So.2d 1250, 1256 (Ala.1998).”
Ervin v. Excel Props., Inc., 831 So.2d 38, 41 (Ala.Civ.App.2001). “To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains.” Martin v. Arnold, 643 So.2d 564, 567 (Ala.1994).
Galaxy appears to argue that it had to have notice that the yellow guard had been moved in order for a jury to find it guilty of wantonness. Although Galaxy did not have to have actual knowledge of the defect in the guy wire in order for a jury to find wantonness because wantonness is conduct carried on with a reckless or conscious disregard of the rights of safety of others, Lance v. Ramanauskas, 731 So.2d 1204, 1211 (Ala.1999), there is insufficient evidence of wantonness in this case. There was evidence indicating that Galaxy, when it placed yellow guy-wire guards on guy wires, did so because guy wires are dangerous and the guard protects the guy wire from being hit by people, cars, or lawnmowers. The yellow guard in this case had been pushed to the top of the guy wire. The fact that Galaxy, when it was conducting its annual inspection of poles for other purposes or when conducting service calls for other problems, did not notice that the yellow guard had been moved does not support a finding of a conscious disregard for the rights or safety of others because it is speculative to conclude that the position of the yellow guy-wire guard was the same at the time of any such inspection of the pole by Galaxy as it was on the date of Benjamin’s injury. Accordingly, Pamela failed to present sufficient evidence of wantonness on Galaxy’s part.
Because of our holding as to wantonness, we pretermit the remainder of Galaxy’s arguments regarding the punitive-damages award.

Conclusion

We affirm the trial court’s judgment in favor of Pamela based on her negligence claim. However, we reverse that part of the judgment in favor of Pamela based on her wantonness claim because the evidence to support that claim was insufficient. We therefore remand the case for the trial court to set aside the punitive-damages award.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
COBB, C.J., and LYONS, STUART, SMITH, PARKER, and SHAW, JJ., concur.
WOODALL, J., concurs in the result.
MURDOCK, J., concurs in the result in part and dissents in part.

. On April 7, 2010, Galaxy moved to supplement the record with the following: its requested jury instructions, the motion for a JML filed at the close of Pamela's case, any transcribed or written jury questions, the trial exhibits, and any other documents constituting the entire record. The motion was granted. The clerk filed a response that is included in the supplemental record. She states in her response that Galaxy’s requested jury instructions, motion for a JML, and any transcribed or written questions from the jury were never filed in the clerk’s office. She stated that all the exhibits had been mailed to this Court and that all other documents had been included in the original record.

. Galaxy makes no argument regarding its status as a licensed user of Alabama Power's utility pole placed on an easement held by Alabama Power.