We granted Timothy Schaeffel's petition for a writ of certiorari to review the Court of Civil Appeals' no-opinion affirmance of the Colbert Circuit Court's summary judgment for respondents Wal-Mart Stores, Inc., W.G. Yates Sons Construction Company, and Irons Electric Company, Inc., in Schaeffel's action stemming from injuries he sustained while repairing a freezer on the premises of a Wal-Mart Super Center. We affirm.
 I. Standard of Review
We review the trial court's summary judgment de novo, according to the following procedure:
 "When reviewing a trial court's summary judgment, this Court reviews the record in a light most favorable to the nonmovant, resolving all reasonable doubts against the movants, to determine whether there is a genuine issue of material fact and whether the movants are entitled to a judgment as a matter of law. Copeland v. Samford Univ., 686 So.2d 190, 191 (Ala. 1996). A summary judgment is proper when `the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 56(c)(3), Ala.R.Civ.P. In determining whether there is a genuine issue of material fact, this Court is limited to considering the factors that were before trial court when it entered the judgment. Broadmoor Realty, Inc. v. First Nationwide Bank, 568 So.2d 779, 782 (Ala. 1990).
 "'The moving party bears the burden of negating the existence of a genuine issue of material fact and showing that it is entitled to a judgment as a matter of law.' White v. Howie, 677 So.2d 752, 753
(Ala.Civ.App. 1995). `In order to defeat a properly supported motion for summary judgment, the opposing party must present substantial evidence creating a genuine issue of material fact.' Voyager Guar. Ins. Co. v. Brown, 631 So.2d 848, 849 (Ala. 1993)."
Singleton v. Protective Life Ins. Co., [Ms. 1012405, March 7, 2003]857 So.2d 803, 812-13 (Ala. 2003).
 II. Facts
Timothy Schaeffel, a service technician for a refrigeration, heating, and cooling company, responded to a call to repair a low-temperature floor-to-ceiling freezer at a Wal-Mart Super Center in Muscle Shoals. This was the first time Schaeffel had serviced this particular freezer.
Servicing the freezer required Schaeffel to climb through a square opening in the ceiling approximately four feet by four feet in order to work on the freezer's condensing unit, which was located on the top of the freezer. The light that came through the opening provided the only light in the area around the condensing unit. When he climbed through the opening and onto the top of the freezer, Schaeffel found that he could not walk around the left side of the condensing unit because the area was blocked by debris, shelving, wire racks, and refrigerator fixtures. Therefore, Schaeffel walked around the right side of the condensing unit.
Schaeffel testified that, although he could not see the edge of the drop ceiling (which was adjacent to the top of the freezer), as he was walking along the right side of the unit he felt the edge of the drop ceiling with his foot; in fact, he testified, he almost fell off the work area and *Page 495 
through the ceiling at that point. After regaining his balance, Schaeffel went behind the condensing unit and examined the defrost timer. To do so, he had to hold a cigarette lighter up to the "sight glass" (which showed how much refrigerant was in the unit) because he had left his flashlight in his truck. Schaeffel then began to walk away from the top of the freezer the same way he had come when he tripped on a piece of conduit coming out of the unit, fell through the ceiling, and was injured.
Schaeffel sued Wal-Mart, Irons Electric Company, Inc. ("Irons"), and W.G. Yates Sons Construction Company ("Yates"), alleging negligence; Schaeffel's wife, Mary Ellen Schaeffel, filed a derivative claim alleging loss of consortium. Yates served as the general contractor for the construction of the Wal-Mart Super Center building, and Irons performed some of the electrical work on the construction of the store. Specifically, Schaeffel alleged that Yates had breached a duty to Schaeffel when it allegedly violated the Southern Building Code in constructing the area around the condenser unit and that Wal-Mart had failed to properly supervise Yates in that regard. Schaeffel also alleged that Irons had also violated the Southern Building Code and had thereby breached a duty to Schaeffel.
Wal-Mart, Yates, and Irons (hereinafter referred to collectively as "the defendants") filed answers and motions for a summary judgment raising the defenses of contributory negligence and assumption of the risk. The trial court entered a summary judgment in favor of the defendants without a written order.
The Alabama Court of Civil Appeals affirmed the trial court's summary judgment, without an opinion. Schaeffel v. Wal-Mart Stores, Inc. (No. 2001009, July 19, 2002), ___ So.2d ___ (Ala.Civ.App. 2002) (table). In its no-opinion affirmance, the Court of Civil Appeals cited decisions discussing the defenses of contributory negligence or assumption of the risk: McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957
(Ala. 1992); Knight v. Alabama Power Co., 580 So.2d 576 (Ala. 1991); andCarroll v. Deaton, Inc., 555 So.2d 140 (Ala. 1989). We granted Schaeffel's petition for the writ of certiorari to review the Court of Civil Appeals' apparent holding that in conducting his activities in the dark area around the condensing unit Schaeffel had assumed the risk and had been contributorily negligent.
Schaeffel acknowledges that this Court has held that total darkness is an open and obvious danger, as a matter of law, see Owens v. NationalSec. of Alabama, Inc., 454 So.2d 1387, 1390 (Ala. 1984) ("The condition of total darkness is sufficient to put reasonable people on notice of a substantial risk of concealed hazards." (emphasis added)); Ex parteIndustrial Distrib. Servs. Warehouse, Inc., 709 So.2d 16, 19 (Ala. 1997) ("Total darkness, possibly concealing an unseen and unknown hazard, presents an open and obvious danger to someone proceeding through unfamiliar surroundings, as a matter of law." (emphasis added)); Schaeffel argues, however, that this case involves partial darkness, and that a summary judgment was therefore inappropriate under our decision inEx parte Kraatz, 775 So.2d 801 (Ala. 2000). In Kraatz, we held that a summary judgment based on contributory negligence or assumption of the risk was not appropriate in a negligence action involving a woman who, while walking in dim light in a parking lot of a gasoline service station, tripped on an unmarked, black, "ragged" speed bump and was injured. 775 So.2d at 803-04. We noted a distinction between dim light conditions and total darkness with regard to open and obvious dangers: *Page 496 
 "Partial or poor light, like that in the case before us, could mislead a reasonably prudent person into thinking that he or she would be able to see and to avoid any hazards. The variable factors which make openness-and-obviousness under partial or poor light conditions a fact question not appropriate for resolution by summary judgment are direction, level, color, diffusion, shadows, and like qualities of light as well as the other physical features of the scene."
Kraatz, 775 So.2d at 804.
Schaeffel contends that this case is similar to Kraatz in that Schaeffel was working not in total darkness, but in dim light, when he fell. We disagree. As we stated in Kraatz, "[p]artial or poor light . . . could mislead a reasonably prudent person into thinking that he or she would be able to see and to avoid any hazards." Id. In other words, dim light is light sufficient to make one believe that he can sufficiently see and identify dangers, but in reality he cannot properly make such identifications. The problem in Kraatz was not that Kraatz could not have seen the speed bump if she had been made aware of it (as would be the case in total darkness). Rather, there was evidence indicating that Kraatz could see the blacktop parking lot but that the dim lighting made the black speed bump appear to be just another flat section of the lot, misleading Kraatz into believing that she could walk on the lot without danger. Kraatz, 775 So.2d at 803-04.
In these types of cases, the real question is not whether some light exists in some part of a room in which an injury occurs. Instead, we must focus on the specific location of the cause of the injury: in this case, the walking space around the condensing unit.
Schaeffel testified that he could not see anything in the area where he was walking:
 "Q. Okay. And as you were walking along the right side of the condensing unit, your foot hit the edge of the freezer and the beginning of the drop ceiling?
 "A. I actually felt it under my foot, the first step I started to take around that side.
 "Q. So, immediately then you knew that there was a drop ceiling —
"A. Correct.
"Q. — on the right-hand side?
 "A. Even though I couldn't visually see it because of the lighting and all, yes, there was a ceiling there and I was aware of it.
 "Q. And, in fact, you almost fell then because you had to grab some stuff?
"A. The first step, I nearly put my foot too far forward.
". . . .
 "Q. When you first came back through the opening to go around to the back side of the condenser, did you look down where you were walking?
"A. Yes.
"Q. Did you see the conduit?
"A. Couldn't see anything hardly.
". . . .
 "Q. . . . But you didn't look down to see if there was any [conduit] on the ground or the floor?
 "A. I looked, but where I was at, I couldn't see anything, I mean.
". . . .
 "Q. . . . But your testimony is you couldn't — there was no light falling on the — piece of conduit [that Schaeffel tripped on]?
 "A. I didn't even know this four-inch junction box was [there] until later, in fact, some months later, but I couldn't *Page 497 
see any of this at the time from the light . . . .
 "Q. You couldn't see the junction box and you couldn't see the . . . conduit at the time —
"A. No."
Additionally, Schaeffel had to light his cigarette lighter to be able to see the "sight glass" on the condenser unit.
In other words, while there may have been some light coming through the opening in the ceiling, the relevant area — the walking space around the condenser unit — was in total darkness, not dim light. The total darkness represented an open and obvious danger that could "possibly conceal an unseen and unknown hazard" like the conduit.[1]Ex parte Industrial Distrib. Servs. Warehouse, Inc., 709 So.2d at 19. Whether on the basis of contributory negligence or assumption of the risk, Schaeffel's walking in such conditions while being aware that the drop ceiling was inches away entitles the defendants to a judgment as a matter of law, and, there being no genuine issue of material fact, justifies the Court of Civil Appeals' affirmance of the trial court's summary judgment in favor of the defendants.
AFFIRMED.
MOORE, C.J., and LYONS, JOHNSTONE, and WOODALL, JJ., concur.
[1] We also note that Schaeffel testified that he knew that conduit would be present somewhere in the work area, but that he did not expect it to be on the side of the condensing unit where he was working.