WOODALL, Justice.
 

 Nadejda N. Barrett (“Nadia”) appeals the trial court’s summary judgment in favor of Oleg Radjabi-Mougadam (“Oleg”) in Oleg’s breach-of-contract action against her. We reverse the trial court’s judgment and remand the case for further proceedings.
 

 Facts and Procedural History
 

 Oleg alleges that, in 1993, Nadia, who was then married to Oleg’s brother, Vladimir Radjabi-Mougadam (“Vladimir”), and living in Alabama, sent a letter to Oleg and his wife, who were living in Kazakhstan, asking for a $600,000 loan. According to Oleg, Nadia said she wanted to use the money to buy real estate in Alabama, and she promised to repay the loan in 10 years and to pay interest at the rate of 10% per year. Oleg states that he agreed to make the loan and that he later wired the money in three separate transfers into Nadia’s account with First Alabama Bank (now Regions Bank). In his deposition, Vladimir testified that the account into which the funds were deposited was solely in Nadia’s name and under her control.
 

 Sometime after the funds were deposited, according to Oleg, Nadia wrote him another letter, acknowledging receipt of the money and asking him to reduce the interest rate on the loan to 7% per year. Oleg says that he agreed to reduce the interest rate to 7%. Oleg alleges that, in 1999, Nadia contacted him again and asked him to extend the repayment deadline on the loan to October 2005. Oleg says that he agreed to that change as well.
 

 In 2003, Nadia and Vladimir divorced. Pursuant to the divorce judgment, Nadia received title to two condominiums that Vladimir and she owned in Baldwin County (“the Baldwin County properties”). Oleg argues that the Baldwin County properties, as well as Nadia and Vladimir’s residence in Huntsville, were purchased using the money he had loaned Nadia. In December 2004, Vladimir filed a petition in bankruptcy. Nadia never repaid the alleged loan.
 

 In March 2006, Oleg sued Nadia and Vladimir, seeking damages for their alleged breach of contract in failing to repay the loan. In October 2006, Nadia sent a letter to the Kazakhstan government, along with a copy of Oleg’s complaint translated into Russian, suggesting that the government look into Oleg’s financial activities. Oleg states that the Kazakhstan
 
 *97
 
 government initiated an investigation and, as part of that investigation, seized all original documents relating to his financial activities, including the letters Nadia allegedly sent him regarding the loan.
 

 During her deposition, Nadia testified that she never wrote Oleg any letters seeking or confirming a loan and that she did not know about any loan until Oleg sued her in 2006. Nadia testified that during their marriage Vladimir controlled the couple’s finances and that he arranged for her to open the bank account into which Oleg allegedly deposited loan funds. Nadia further testified that any checks written on the account and bearing her signature would have been written on Vladimir’s instructions.
 

 In March 2007, Nadia moved the trial court to put the case on its administrative docket until the original documents seized by the Kazakhstan government were returned to Oleg. Oleg responded, arguing that it was Nadia’s fault that the Kazakhstan government had seized the documents, that the government had provided him with copies of the original letters, that Vladimir had testified that those copies were identical to the original letters he had seen Nadia sign, and that putting the case on the court’s administrative docket would allow Nadia the opportunity to dispose of valuable assets, including the Baldwin County properties. The trial court granted Nadia’s motion and put the case on its administrative docket. Oleg moved the trial court to reconsider its decision, and the trial court set that motion for a hearing in August 2007.
 

 In July 2007, the trial court dismissed Vladimir from the action on the ground that any liability he might have had for the alleged debt had been discharged in the 2004 bankruptcy proceeding. In August 2007, Oleg moved for a summary judgment. Nadia filed a motion to strike the exhibits that were attached to Oleg’s motion, but the trial court never ruled on the motion to strike. Instead, in March 2009, the trial court granted Oleg’s summary-judgment motion and entered a judgment against Nadia for more than $1.5 million, representing the principal amount of the loan and unpaid interest. According to the trial court’s order, the judgment was entered after the trial court “considered all testimony, exhibits, the briefs of counsel and the argument therewith, with the law with respect to this matter.”. From that judgment, Nadia appealed.
 

 Issues
 

 Nadia raises two issues on appeal: (1) whether the trial court erred in failing to grant her motion to strike the exhibits Oleg attached in support of his summary-judgment motion; and (2) whether, because of the existence of genuine issues of material fact regarding Oleg’s breaeh-of-contract claim or because Oleg did not have in his possession the original letters she allegedly wrote, the trial court erred in granting Oleg’s motion for a summary judgment. Our resolution of the first issue is dispositive of this appeal.
 

 Standard of Review
 

 “ ‘[O]ur review of a summary judgment is
 
 de novo;
 
 that is, we must examine all the evidentiary submissions that were presented to the trial court.’”
 
 Falls v. JVC America, Inc.,.
 
 7 So.3d 986, 989 (Ala.2008) (quoting
 
 Lee v. City of Gadsden,
 
 592 So.2d 1036, 1038 (Ala.1992)). Written documents not certified or otherwise authenticated as required by Rule 56(e), Ala. R. Civ. P., may not properly be considered on a motion for a summary judgment,
 
 Power Equip. Co. v. First Alabama Bank,
 
 585 So.2d 1291, 1299 (Ala.1991). “An affidavit sufficient to satisfy Rule 56(e) ... [must be] confirmed by the oath or affirmation of the party making it, taken before a person having authority to
 
 *98
 
 administer an oath or affirmation.”
 
 Couch v. City of Sheffield,
 
 708 So.2d 144, 152-53 (Ala.1998).
 

 Analysis
 

 Oleg alleges in his complaint that Nadia breached her contract with him by refusing to repay the $600,000 loan and the accrued interest. To prevail on his summary-judgment motion, Oleg must make a prima facie showing that there were no genuine issues of material fact as to any element of his breach-of-contract claim. “ ‘The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs performance under the contract; (3) the defendant’s nonperformance; and (4) resulting damages.’ ”
 
 Shaffer v. Regions Fin. Corp.,
 
 29 So.3d 872, 880 (Ala.2009) (quoting
 
 Reynolds Metals Co. v. Hill,
 
 825 So.2d 100, 105 (Ala.2002)). “Documents submitted in support of ... a summary-judgment motion are generally required to be certified or otherwise authenticated; if they are not, they constitute inadmissible hearsay and are not considered on summary judgment.”
 
 Tanksley v. ProSoft Automation, Inc.,
 
 982 So.2d 1046, 1053 (Ala.2007). “ ‘An affidavit sufficient to satisfy Rule 56(e)[, Ala. R. Civ. P.,] is a written declaration or statement of facts, made voluntarily and based on personal knowledge, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer an oath or affirmation.’”
 
 Ex parte Puccio,
 
 923 So.2d 1069, 1071 n. 3 (Ala.2005) (quoting
 
 Couch,
 
 708 So.2d at 152-53).
 

 First, Nadia argues that, pursuant to Rule 1002, Ala. R. Evid.,
 
 [1]
 
 Oleg must provide the original letters to prove the existence of the contract Oleg alleges she breached. She further argues that the copies he offered in support of his summary-judgment motion cannot be substituted for the original letters because she has raised a genuine question as to the authenticity of the originals. Rule 1003, Ala. R. Evid. (“A duplicate is admissible to the same extent as an original unless ... a genuine question is raised as to the authenticity of the original.”). However, Nadia’s arguments ignore the effect of Rule 1004, Ala. R. Evid.
 

 Rule 1004 provides, in pertinent part, that “[t]he original is not required, and other evidence of the contents of a writing is admissible,
 
 should there he no duplicate readily available
 
 to the proponent or witness, if ... [n]o original can be obtained by any available judicial process or procedure.” (Emphasis added.) “Preexisting Alabama law does not require an offeror relying upon this ground of unavailability [of the original] to show an effort to have the third person produce the original, if the third person is outside Alabama.” Rule 1004, Advisory Committee’s Notes. Thus, the originals of the letters were “unavailable” to Oleg, because they were being held by the government of Kazakhstan. However, the Kazakhstan government made copies of the letters available to Oleg, and he is entitled to offer those copies, provided they are properly authenticated. See
 
 Ryan’s Family Steakhouse, Inc. v. Brooks-Shades,
 
 781 So.2d 215, 218 (Ala.2000) (“Rule 1004 allows for the admissibility of ‘other evidence of the contents of a writing’ when the proponent of that evidence has neither the original nor a duplicate of the writing.... The comments to Rule 1004 state in part that ‘one may not offer oral testimony as to the contents of a writing without first having to produce
 
 *99
 
 or account for the nonproduction of a copy
 
 that exists.’
 
 ”). Therefore, contrary to Nadia’s argument, Oleg’s attachment to his summary-judgment motion of copies of letters she purportedly wrote did not violate Rule 1002, 1003, or 1004, Ala. R. Evid. If the copies were properly authenticated, they were admissible and could be considered by the trial court in ruling upon the motion.
 

 However, Nadia argues, the purported copies of the letters, as well as most of the other exhibits Oleg attached to his motion for a summary judgment, were not properly authenticated and, thus, should not have been considered by the trial court. Exhibits A, Al, A3, B, Bl, and B3 are purportedly copies of the original letters Nadia allegedly sent Oleg asking for the loan and confirming receipt of the loan funds. Exhibits A2 and B2 were submitted as English translations of those original letters, which were written in what we presume to be the Russian language. Nadia argued to the trial court that these exhibits were inadmissible because, she says, among other things, the documents were not authenticated as required by Rule 901, Ala. R. Evid.
 

 Rule 901(a) provides, in pertinent part: “The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.”
 

 The Advisory Committee’s Notes to Rule 901 state:
 

 “Rule 901 embraces the historic requirement that the proponent of real or demonstrative evidence (all nontestimonial evidence, such as writings, objects, etc.) lay a threshold foundation, as á prerequisite to admissibility, sufficient to show that the evidence is what it is represented to be.... When a writing is offered as evidence, Rule 901 continues the necessity for laying a foundation to authenticate the document as genuine....
 

 “... The required foundational showing must consist of evidence ‘sufficient to support a finding that the matter in question is what its proponent claims.’ The evidence of authentication or identification, as under prior. Alabama practice, does not have to be conclusive or overwhelming; rather, it must be strong enough for the question to go to the jury.”
 

 None of the letters constituting Exhibits A, Al, B, and Bl include any statement or certification that they are true copies of the original letters, nor do Exhibits A2 and B2 include any verification that they are true translations of the original letters. Therefore, we agree with Nadia that those exhibits are not admissible in support of Oleg’s motion for a summary judgment.
 
 [2]
 

 In
 
 Purvis v. PPG Industries, Inc.,
 
 502 So.2d 714, 715-16 (Ala.1987), this
 
 *100
 
 Court stated: “When ruling on a motion for summary judgment, a trial court may properly consider any material that would be admissible at trial and all evidence of record, as well as material submitted in support of or in opposition to the motion.” (Emphasis omitted.) As discussed previously, the exhibits constituting the alleged contract documents, i.e., the purported copies of the original letters, were not admissible because they were not properly authenticated. Further, Oleg also supported his summary-judgment motion with his own affidavit, which, as he admits, “was not notarized in Kazakhstan.” Oleg’s brief, at 13. Thus, that document was not sufficient to satisfy Rule 56(e). See
 
 Pucdo,
 
 supra. By the terms of its judgment, the trial court admittedly entered its judgment after “having considered
 
 all testimony, exhibits,
 
 the briefs of counsel and the argument therewith, with the law with respect to this matter.” (Emphasis added.) Therefore, the trial court’s judgment was based, at least in part, on “material that would [not] be admissible at trial” and is, therefore, due to be reversed.
 

 Conclusion
 

 Because the trial court considered inadmissible evidence in rendering its decision on Oleg’s motion for a summary judgment, we reverse that judgment and remand the case for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and SMITH, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . Rule 1002, Ala. R. Evid., provides: "To prove the content of a writing,
 
 the original writing is required, except as otherwise provided by
 
 statute,
 
 these rules,
 
 or by other rules applicable in the courts of this state." (Emphasis added.)
 

 [2]
 

 . Exhibits A3 and B3 include the attestation of two "Transit Service” officials and the certification of the vice consul of the United States for Almaty City, Kazakhstan, that the documents are "exact and true photo cop[ies] of the original document.” This authentication appears to be sufficient under Rule 902(3), Ala. R. Evid, which provides, in part:
 

 “A document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of an embassy or legation, consul general, consul, vice consul, or consular
 
 *100
 
 agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States.”
 

 However, Exhibits A3 and B3 are in what we presume to be the Russian language and, without authentication and verification of the documents purported to be translations of those exhibits, they do not provide probative evidence as to the existence of a contract.