Rel: May 19, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2022-2023

————————————————

### SC-2022-0560

————————————————

**Douglas P. Byrne**

**v.**

**Vera Fisk**

**Appeal from Madison Circuit Court**
**(CV-20-901659)**

BRYAN, Justice.

Douglas P. Byrne appeals from a summary judgment entered by the

Madison Circuit Court in favor of Vera Fisk regarding Byrne's premises-

liability negligence claim against Fisk.  For the reasons explained below,

we reverse the circuit court's judgment and remand this cause for further proceedings.

## Background

On December 8, 2018, Byrne was a mail carrier working for the United States Postal Service. That evening, Byrne was responsible for a delivery route different from his usual route. Byrne attempted to deliver mail to Fisk's residence in Huntsville. Although Fisk's home was not on his usual delivery route, Byrne had likely delivered mail there before, including within the preceding year. It was dark outside, and it was raining. Fisk's porch lights were not turned on, but Byrne was wearing a headlamp, which was on at the time. Byrne was also wearing slip-resistant boots, as required by his employer.

Byrne traversed the five tiled steps leading to Fisk's tiled front porch, where her mailbox was located. According to Byrne's testimony, he was holding the handrail and being careful. However, Byrne slipped and fell backward down the steps. Byrne suffered three fractures in his right femur and a fracture in his hip socket. He was hospitalized for nine days, underwent multiple weeks of rehabilitation, and returned to work in May 2019.

In December 2020, Byrne commenced this action against Fisk and fictitiously named parties. Byrne alleged that there were defects in Fisk's premises about which Fisk knew or should have known and that Fisk should have remedied the defects or should have warned him about or guarded him from the defects. Byrne's complaint asserted a negligence claim and a "wantonness/recklessness" claim. Byrne sought awards of compensatory and punitive damages.

Fisk answered Byrne's complaint and, in March 2022, moved for a summary judgment. Fisk attached evidence in support of her summary-judgment motion. Byrne responded to Fisk's summary-judgment motion, attaching evidence in support of the response. Fisk filed a reply to Byrne's response. On May 1, 2022, the circuit court entered an order granting Fisk's summary-judgment motion without specifying the precise reason or reasons for its judgment. Byrne appealed to this Court.[1]

---

[1]As noted above, Byrne's complaint also included fictitiously named defendants. However, at the time of the entry of the circuit court's judgment, Fisk was the only defendant who had been served; Byrne did not substitute parties for the fictitiously named defendants set out in his complaint.

> "'When there are multiple defendants and the summons or other document to be served and complaint has been served on one or more, but not all, of the defendants, the plaintiff may

Standard of Review

"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So. 2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So. 2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So. 2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So. 2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. '[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'

---

proceed to trial and judgment as to the defendant or defendants on whom process has been served and if the judgment as to defendants who have been served is final in all other respects, it shall be a final judgment.' Rule 4(f), [Ala. R. Civ. P.,] as amended March 1, 1982.

"Under Rule 4(f), service on the other defendants must be completed, not merely attempted, before it can be said the pending action involves other active defendants."

Owens v. National Sec. of Alabama, Inc., 454 So. 2d 1387, 1388 n.2 (Ala. 1984). See also Ex parte Harrington, 289 So. 3d 1232, 1237 n.5 (Ala. 2019)("A judgment that disposes of fewer than all the defendants is final when the defendants as to whom there has been no judgment have not yet been served with notice.").

4

West v. Founders Life Assur. Co. of Fla., 547 So. 2d 870, 871 (Ala. 1989)."

Dow v. Alabama Democratic Party, 897 So. 2d 1035, 1038-39 (Ala. 2004).

Analysis

Before turning to the parties' appellate arguments, we first note that Byrne concedes on appeal that a summary judgment was proper regarding his "wantonness/recklessness" claim. Therefore, we will not consider the propriety of the judgment on that claim, and the following analysis addresses only the propriety of the judgment on Byrne's negligence claim.

> "'In [a] premises-liability case, the elements of negligence "'are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages.'"' Ex parte Harold L. Martin Distrib. Co., 769 So. 2d 313, 314 (Ala. 2000)(quoting E.R. Squibb & Sons, Inc. v. Cox, 477 So. 2d 963, 969 (Ala. 1985), quoting in turn David G. Epstein, Products Liability: Defenses Based on Plaintiff's Conduct, 1968 Utah L. Rev. 267, 270 (1968))."

Sessions v. Nonnenmann, 842 So. 2d 649, 651 (Ala. 2002).

Regarding the duty element of a premises-liability negligence claim, this Court has explained:

> "The duty owed by a landowner to an injured party depends upon the status of the injured party in relation to the landowner's land, i.e., is the injured party a trespasser, a

5

> licensee, or an invitee. … A person who enters land with the landowner's consent to bestow some material or commercial benefit is an 'invitee,' and a landowner owes an invitee the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee."

Galaxy Cable, Inc. v. Davis, 58 So. 3d 93, 98 (Ala. 2010)(footnote omitted).

The parties agree that Byrne was an invitee on Fisk's premises at the time of Byrne's fall. Consequently, regarding Byrne, Fisk had a general duty to keep the premises in a reasonably safe condition and, if the premises were not reasonably safe, to warn Byrne of defects and dangers that were known to Fisk but that were hidden or unknown to Byrne. Id. The parties' arguments focus primarily on the evidence produced regarding whether the condition of Fisk's premises was defective or unreasonably dangerous and whether that condition proximately caused Byrne's fall. Fisk also argues that, under the circumstances present at the time of Byrne's fall, any danger posed by the condition of her premises was open and obvious as a matter of law, thereby relieving her of any duty to warn Byrne. We address each issue in turn.

I. Allegedly Dangerous Condition

6

Fisk argues that no defect or unreasonably dangerous condition existed on her premises, the presence of which is an essential element of Byrne's premises-liability negligence claim. See Davis, 58 So. 3d at 98.

> "'"'If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56[, Ala. R. Civ. P.,] burden of production either by submitting affirmative evidence that negates an essential element in the nonmovant's claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim.'"
>
> "'[Ex parte General Motors Corp., 769 So. 2d 903, 909 (Ala. 1999)](quoting Justice Houston's special concurrence in Berner v. Caldwell, 543 So. 2d 686, 691 (Ala. 1989), overruling Berner and adopting Justice Houston's special concurrence in Berner as the accurate statement of the law)(emphasis omitted).'
>
> "Locke v. City of Mobile, 851 So. 2d 446, 448 (Ala. 2002)."

City of Gadsden v. Harbin, 148 So. 3d 690, 696 (Ala. 2013). Citing her own deposition testimony and Byrne's deposition testimony, Fisk notes the following.

Fisk's porch and the steps leading to the porch were constructed in the 1950s. The tile covering the steps and the porch was installed in 2010

7

or 2012. Fisk testified that she was unaware of any other slips or falls on the porch before Byrne fell in December 2018. Byrne testified that, before his fall, he was not aware of anyone else who had complained about the condition of Fisk's porch, that he had not complained about the condition of the porch, and that, as far as he knew, he was the only person who had ever fallen on the porch. Fisk also testified that she had never had any problem with the tile covering the porch and the steps being slicker when wet.

In light of the foregoing, we conclude that Fisk produced sufficient evidence to make a prima facie showing that no defect or unreasonably dangerous condition existed on her premises at the time of the incident. See Harbin, 148 So. 3d at 696. Thus, the burden shifted to Byrne to produce substantial evidence demonstrating the existence of a genuine issue of material fact regarding that issue. See Dow, 897 So. 2d at 1038-39.

In opposition to Fisk's summary-judgment motion, Byrne produced an affidavit executed by Hal K. Cain, a professional engineer, who averred that he possessed, among other credentials, a contractor's license. Cain's affidavit averred that he had reviewed transcripts of the

parties' depositions and photographs of Fisk's premises, including photographs depicting certain measurements of her steps and porch landing. Cain's affidavit indicated that two defects likely existed on Fisk's premises. First, Cain averred:

"Determination as to the type of tile in place on the porch as of December 8, 2018, would likely require some destructive testing. However, based upon the testimony of … Byrne, the precautions taken by him[,] and the equipment being used[,] it would appear that the tile in question would not meet the minimum requirements for outdoor tile to be used in an outdoor setting for steps and/or porch covering."

Second, Cain noted that the five steps leading to Fisk's porch were uneven in height and depth, which he averred did not comply with the requirements of the 1991, 1994, 1997, and 1999 Standard Building Codes or the 2009 International Residential Code, which codes Cain averred were applicable in the City of Huntsville at the time of Byrne's fall and in 2012. According to Cain's affidavit, the applicable building-code provision required the following:

"Treads shall be of uniform depth and risers uniform height in any stairway between two floors. There shall be no variation exceeding 3/16 inch (4.8mm) in the depth of adjacent treads or in the height of adjacent risers and the tolerance between the largest and smallest riser or between the largest and smallest tread shall not exceed 3/8 inch (9.5mm) in any flight."

9

Cain further averred:

"Relative to the risers on Fisk['s] steps, such are not of uniform height[,] and the variation is 3 [and] 3/34th inches between the [fourth] and [fifth] risers, which are adjacent, which is greater than the allowable variation of 3/16 inch[,] pursuant to the code. The difference between the largest and smallest riser exceeds 3/8th inch in the flight. Relative to the treads on … Fisk['s] steps[,] such are not of uniform depth[,] and the variation is 4 [and] 11/16th inches between the [third] and the [fourth] treads, which are adjacent, [which] is greater than the allowable 3/16 inch pursuant to the code. The difference between the largest and smallest tread exceeds 3/8th inch in the flight."

Cain's affidavit described the condition of Fisk's premises as "defective and dangerous." Cain's affidavit also included additional opinions regarding other elements of Byrne's premises-liability negligence claim.

In the circuit court, Fisk moved to strike much of Cain's affidavit, arguing that portions were based on speculation, that portions were contrary to Byrne's deposition testimony, that portions would preempt the role of the jury, and that portions were irrelevant, immaterial, and would be misleading to a jury. However, the circuit court did not rule on Fisk's motion to strike the affidavit. Therefore, we must assume that the circuit court considered the affidavit when ruling on Fisk's summary-judgment motion. See Fogarty v. Southworth, 953 So. 2d 1225, 1233 (Ala. 2006).

10

Moreover, we note that the circuit court's judgment in this case explicitly stated that the circuit court had considered Fisk's summary-judgment "motion, [the] matters submitted in support thereof and in opposition thereto, argument[s] of counsel, and applicable law …." Thus, the judgment indicates that the circuit court considered all materials submitted by Byrne, including Cain's affidavit, in ruling on Fisk's summary-judgment motion. Therefore, it appears that the circuit court implicitly denied Fisk's motion to strike portions of Cain's affidavit. See Barnwell v. CLP Corp., 235 So. 3d 238, 243 (Ala. 2017).

"'"[O]ur review of a summary judgment is de novo; that is, we must examine all the evidentiary submissions that were presented to the trial court."' Falls v. JVC America, Inc., 7 So. 3d 986, 989 (Ala. 2008)(quoting Lee v. City of Gadsden, 592 So. 2d 1036, 1038 (Ala. 1992))." Barrett v. Radjabi-Mougadam, 39 So. 3d 95, 97 (Ala. 2009). "Whether to strike an affidavit is a decision left to the sound discretion of the trial court." Ex parte Harris, 216 So. 3d 1201, 1207 (Ala. 2016).

Several of the arguments that Fisk asserted in the motion to strike that she filed in the circuit court were directed to portions of Cain's affidavit that we find unnecessary to consider for the purpose of this

11

appeal. Thus, we do not address those portions of Cain's affidavit, and we express no opinion concerning their admissibility as evidence.

Regarding the portions of Cain's affidavit quoted above, Fisk essentially asserts two arguments on appeal. First, she argues that Cain's opinion that the tile covering her steps and porch was likely not suitable for outdoor use is speculative because Cain did not personally examine the tile and because determining the type of tile used would require destructive testing. See Chatham v. CSX Transp., Inc., 613 So. 3d 341, 343-44 (Ala. 1993)("Evidence submitted by a nonmovant in opposition to a motion for summary judgment must be in a form admissible in evidence; affidavits must be based on personal knowledge and must contain information that allows more than speculative inferences …. Rule 56(e), Ala. R. Civ. P."). Fisk's argument includes no substantive analysis regarding the standards applicable to inferences drawn by an expert witness. On that point, Rule 703, Ala. R. Evid., provides:

> "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the

12

opinion or inference to be admitted. Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."

Cain's opinion regarding the suitability of the tile covering Fisk's porch and steps for outdoor use stated that it was based on Byrne's deposition testimony explaining the precautions he had taken and the equipment he had used when attempting to traverse Fisk's steps and porch. In the absence of an argument from Fisk demonstrating that Cain could not render such an opinion based on the evidence presented, we cannot conclude that the circuit court exceeded its discretion by failing to strike that portion of Cain's affidavit. Thus, as did the circuit court, we consider that portion of Cain's affidavit in our analysis. See Barnwell, 235 So. 3d at 246.

Regarding Cain's opinion about the uneven construction of Fisk's steps, Fisk notes that Cain's affidavit contains no evidence indicating that her steps or front porch violated any applicable building codes when they were constructed in the 1950s. Fisk asserts that Section 3401.2.1 of the Standard Building Code

"specifically states that[,] while alterations, repairs, or rehabilitation work made to existing structures must conform to the requirements of the technical codes for new construction, the remaining building or structure need not comply with all the requirements of the technical code. The building official shall determine the extent to which the existing systems, including the building and structure, shall be made to conform with the requirements of the technical code for new construction."

Fisk's brief at 24.

Fisk argues that, under the referenced section of the Standard Building Code, her "steps were grandfathered in." Fisk's brief at 23. Consequently, she asserts, Cain's opinion regarding the noncompliance of the construction of her steps is irrelevant, immaterial, and potentially confusing to the fact-finder. She argues that we should not consider Cain's opinion in that regard on appeal.

However, Fisk has presented no evidence in support of her assertion that her steps were "grandfathered" into compliance under the applicable building code.[2] Although Fisk's motion to strike contained this same assertion, "'[s]tatements of counsel are not evidence.' Prattville Mem'l Chapel v. Parker, 10 So. 3d 546, 558 (Ala. 2008)." Capitol Farmers

_____

[2]During her deposition, Fisk testified that she did not know whether the work done on her steps and porch in 2010 or 2012 had been inspected by the City of Huntsville.

Mkt., Inc. v. Delongchamp, 320 So. 3d 574, 582 (Ala. 2020). Therefore, we do not consider Fisk's assertion that her "steps were grandfathered in[to]" compliance under the applicable building code as evidence in this case, and we cannot conclude that the circuit court exceeded its discretion by failing to strike the portion of Cain's affidavit regarding the construction of Fisk's steps based on Fisk's assertion in that regard. Thus, as did the circuit court, we also consider that portion of Cain's affidavit in our analysis. See Barnwell, 235 So. 3d at 246.

We now turn to Byrne's appellate argument regarding the sufficiency of the portions of Cain's affidavit quoted above to create a genuine issue of material fact regarding the allegedly dangerous condition of Fisk's premises. Among other cases, Byrne's brief cites this Court's decision in Mann v. Smith, 561 So. 2d 1112 (Ala. 1990). In Mann, one of the plaintiffs, "during a steady, 'misty' rain, … stopped at a roadside drapery boutique owned by [the defendant]. After browsing through the store, she left by the same door through which she had entered. As she was descending the steps, she slipped and fell onto the pavement outside the building." Mann, 561 So. 2d at 1113.

> "[The defendant] moved for summary judgment, offering
> in support of his motion the depositions of the parties. In

15

opposition to [the defendant]'s motion, the [plaintiffs] presented the affidavit of … an engineer. [The] affidavit stated that the steps leading to the entrance of the building were unreasonably dangerous because of their physical structure and geometric shape."

Id. On appeal, this Court reasoned:

"The [plaintiffs] have established sufficient evidence from which a jury could find that a defect existed in the steps leading to and from [the defendant]'s business. The evidence indicates that the steps at [the defendant]'s business were constructed of concrete and had been painted. Some of the steps were approximately five and one-half feet wide and two of the steps rose six inches high. The top step was not level with the door jamb, but was slightly below the jamb so that someone entering the store had to step from the top step up to enter the store. The first step at the bottom was 16 inches deep and the top step was 6 inches deep."

Id. at 1114. The Mann Court held that the plaintiffs had "established evidence from which a jury could find that a defect existed in the steps." Id.

Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved. See Dow, 897 So. 2d at 1038-39. Cain's affidavit testimony is similar to the affidavit testimony of the engineer in Mann. See also Bishop v. South, 642 So. 2d 442, 445 (Ala. 1994)("The facts of this case are strikingly similar to those

16

of <u>Mann v. Smith</u> ….").  Viewing the evidence in a light most favorable to Byrne, Byrne produced evidence from which fair-minded persons exercising impartial judgment could reasonably infer that Fisk's steps and porch were defective and unreasonably dangerous as a result of the tile used to cover them and the uneven construction of the steps. Therefore, a summary judgment in Fisk's favor was not warranted based on an absence of evidence regarding that aspect of the breach-of-duty element of Byrne's negligence claim.

<u>II. Fisk's Knowledge of the Allegedly Dangerous Condition</u>

In order to establish Fisk's liability for the allegedly unreasonably dangerous condition of Fisk's steps and porch, Byrne must also prove that Fisk had knowledge of the alleged defects.  <u>See</u> <u>Davis</u>, 58 So. 3d at 98. Both parties acknowledge the following principles from this Court's decision in <u>Mims v. Jack's Restaurant</u>, 565 So. 2d 609, 610 (Ala. 1990):

> "[I]n cases where the alleged defect is a part of the premises …, once a plaintiff has made a prima facie showing that a defect in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident."

The <u>Mims</u> Court reasoned that a "fixture ... requires ordinary and reasonable maintenance in order to provide safe premises ...." <u>Id.</u> at 611.

As noted above, Fisk produced evidence in the form of her deposition testimony indicating that she had no knowledge that the steps and the porch were defective or dangerous. However, it is also undisputed that the alleged defects in this case were part of Fisk's premises. No issue has been raised in this case regarding the soundness of the principles from <u>Mims</u> quoted above. Instead, Fisk argues that those principles are applicable only if proximate causation is also proven. The issue of proximate causation is addressed below. However, regarding the issue whether Fisk had actual or constructive knowledge of the alleged defects, we conclude that, based on the reasoning of <u>Mims</u>, which has not been challenged in this case, that issue should be resolved by a jury.

<u>III. Proximate Cause</u>

"Proximate cause is an act or omission that in a natural and continuous sequence, unbroken by any new independent causes, produces the injury and without which the injury would not have occurred." <u>Martin v. Arnold</u>, 643 So. 2d 564, 567 (Ala. 1994). Fisk argues

18

that Byrne's deposition testimony negates the proximate-causation element of his claim. See Harbin, 148 So. 3d at 696; and Sessions 842 So. 2d at 651. Specifically, Fisk argues that it is undisputed that Byrne fell after ascending the steps leading to Fisk's porch. Therefore, Fisk essentially argues, even if a genuine issue of material fact exists regarding whether the construction of her steps was unreasonably dangerous, that condition did not proximately cause Byrne to fall.

In analyzing this argument, we note that it is predicated on the notion that the condition of Fisk's porch was not unreasonably dangerous. As noted above, however, Byrne produced evidence indicating that the tile covering both the steps and the porch was likely not suitable for outdoor use and that the uneven construction of the steps was unreasonably dangerous. Thus, we consider Byrne's deposition testimony regarding proximate causation as it relates both to the uneven construction of Fisk's steps and to the tile covering both the steps and the porch.

As Byrne notes on appeal, Fisk's argument does not address the totality of Byrne's deposition testimony. In relevant part, Byrne testified as follows during his deposition:

19

"I noticed [that] the steps were covered in tile with my headlamp, and it was not dark but fairly dark.  There was a nice big puddle right at the bottom of the steps.  I started up the steps [and] held onto the handrail[.]  I had [mail for three residences] in my left hand.  That's all of the mail [that] I had left to deliver[, so my mail] pouch is empty, not a problem. … When I got to the top step, I remember coming to full height and went to take a step toward the mailbox, released the rail, took that step, and[,] sometime in the process of that step, both of my feet came out from underneath me ….  They slipped toward the house."

When Fisk's attorney asked Byrne if he knew why he had fallen, he testified:

"No, sir, I don't.  As a matter of fact, I run that through my head a thousand times, and I don't know what actually caused it besides that foot and my forward motion[.  M]y foot, both feet, I had one foot in the process of taking a step[,] and both feet just went out from underneath me."

When asked by Fisk's attorney whether the unevenness of Fisk's steps "might have had nothing to do with it," Byrne responded: "I'm not going to speculate either way, either one."  He later responded in the affirmative when Fisk's attorney asked: "But you made it all of the way to the top, you made it all of the way to the porch with both feet standing straight up before you fell; right?"

Fisk's attorney asked: "You're not real sure of what part, if any, the uneven steps played in your fall; is that fair?"  Byrne responded:

20

"If I had to make an educated guess like I've tried to do here, I think the shortness of the top step kind of gave me a false sense of security because the others were even, and then I took a different stride, maybe longer[.] I don't know exactly[.] I know the steps were wet, but I don't remember any particular puddles or anything there that could have assisted to my slipping, but I think that caused me to take a different step at the top and possibly throw me off balance a little bit."

When asked by Fisk's attorney what the unevenness of Fisk's steps had to do with Byrne's fall, Byrne testified:

"Well, in my personal experience, if you've got an even stride, you kind of subconsciously take those steps. If you can pick out, you know, that particular feature, then you would adjust for it, but I did not notice the steps that were different[. I]t was dark, [and] there were some leaves on them …."

Byrne also testified: "[W]hen I got to that top step, it was slick, I can't tell you exactly what. I do know I don't believe in my opinion that there was any ice on that porch and the temperatures had dipped down into the [forties]."

Fisk relies on selective portions of Byrne's deposition testimony in support of her argument. As explained above, however, the applicable standard of review requires that we examine all the evidentiary submissions that were considered by the circuit court. See Barrett, 39 So. 3d at 97. When viewed in a light most favorable to Byrne, the totality of his deposition testimony indicates that fair-minded persons exercising

21

impartial judgment could reasonably infer that the uneven construction of Fisk's steps affected Byrne's stride in ascending the steps, thereby causing him to lose balance upon reaching the top step or porch. Byrne's deposition testimony also indicates that the slickness or slipperiness of the tile covering the steps and the porch contributed to his fall.

Therefore, Byrne's deposition testimony does not negate the proximate-causation element of his claim, see Harbin, 148 So. 3d at 696, and Fisk did not make a prima facie showing that no genuine issue of material fact exists regarding that essential element. See Dow, 897 So. 2d at 1038-39. Thus, the burden of production regarding that element did not shift to Byrne, and a summary judgment was not warranted on the basis that insufficient evidence existed regarding this element.

IV. Openness and Obviousness

Byrne must also prove that Fisk's knowledge of the allegedly dangerous condition of her premises was superior to his own. See Davis, 58 So. 3d at 98. Fisk argues that any dangers present on her premises at the time of Byrne's fall were open and obvious. She contends that she therefore had no duty to warn Byrne of such dangers.

> "A condition is 'open and obvious' when it is 'known to
> the [plaintiff] or should have been observed by the [plaintiff]

22

in the exercise of reasonable care.' Quillen v. Quillen, 388 So. 2d 985, 989 (Ala. 1980). 'The entire basis of [an invitor's] liability rests upon [her] superior knowledge of the danger which causes the [invitee's] injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the [invitor] cannot be held liable.' Id. (citation omitted)."

Denmark v. Mercantile Stores Co., 844 So. 2d 1189, 1194 (Ala. 2002).

Moreover, "[an invitor's] argument that the condition that caused [an invitee's] fall was open and obvious is an affirmative defense, on which [the invitor] bears the ultimate burden of proof." Id. See also Barnwell, 235 So. 3d at 244.

"If, as is the case when the movant is the defendant asserting an affirmative defense, '"the movant has the burden of proof at trial, the movant must support his motion with credible evidence, using any of the material specified in Rule 56(c), [Ala.] R. Civ. P. ('pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits')."' [Ex parte General Motors Corp.], 769 So. 2d [903,] 909 [(Ala. 1999)]. '"The movant's proof must be such that he would be entitled to a [judgment as a matter of law] if this evidence was not controverted at trial."' Id. In other words, 'when the movant has the burden [of proof at trial], its own submissions in support of the motion must entitle it to judgment as a matter of law.' Albee Tomato, Inc. v. A.B. Shalom Produce Corp., 155 F.3d 612, 618 (2d Cir. 1998)(emphasis added)."

Denmark, 844 So. 2d at 1195. "Whether a condition is open and obvious is generally a question for the jury." Id. See also Ex parte Kraatz, 775 So. 2d 801, 804 (Ala. 2000)("'Questions of openness and obviousness of a

23

defect or danger ... are generally not to be resolved on a motion for summary judgment.'" (quoting Harding v. Pierce Hardy Real Estate, 628 So. 2d 461, 463 (Ala. 1993))).

Fisk argues: "The only conditions that created a potential hazard were darkness and rain, each open and obvious conditions as a matter of law." Fisk's brief at 27. Fisk relies on portions of Byrne's deposition testimony in support of her argument. Thus, we must determine whether, based on Byrne's deposition testimony, the dangers referenced by Fisk were open and obvious as a matter of law. See Denmark, 844 So. 2d at 1195. We consider each in turn below.

A. Darkness

Fisk argues: "The fact that darkness may hide potential dangers is open and obvious, as a matter of law." Fisk's brief at 29. As explained above, the alleged hidden dangers in this case were the uneven construction of the steps leading to Fisk's porch and the fact that the tile covering the steps and the porch was not suitable for outdoor use. Thus, the question presented is whether, as a matter of law, the darkness of Fisk's premises was such that she could not reasonably be said to have superior knowledge that such dangers may be present on her premises.

24

See Denmark, 844 So. 2d at 1195.  Put another way, was the darkness of Fisk's premises "sufficient to put reasonable people on notice of a substantial risk of concealed hazards"?  See Owens v. National Sec. of Alabama, Inc., 454 So. 2d 1387, 1390 (Ala. 1984).

Byrne testified that "it was dark [and] had been for an hour and a half, maybe," when he attempted to deliver mail to Fisk's residence.  He also stated: "I approached the house, [and] no porch light [was] on -- it was very dark."  However, Byrne also testified that, at the time, he was wearing a "Black Diamond brand" headlamp, which he estimated emitted "400 lumens" of light; he said that the headlamp was "very efficient to light[] the way."  Thus, as Byrne approached Fisk's porch, he "noticed [that] the steps were covered in tile with [his] headlamp, and it was not dark but fairly dark."  He later answered in the affirmative when asked by Fisk's attorney if he wears his headlamp because he knows that houses where he is delivering mail may not have porch lights turned on and will be dark.  He said that he knew to expect conditions like darkness when delivering mail and that that is why he came prepared for that condition.

Byrne testified that, "[t]o the best of [his] memory," he did not notice that Fisk's steps were uneven before his fall. As noted above, when asked by Fisk's attorney what the unevenness of Fisk's steps had to do with Byrne's fall, Byrne testified:

"Well, in my personal experience, if you've got an even stride, you kind of subconsciously take those steps. If you can pick out, you know, that particular feature, then you would adjust for it, but I did not notice the steps that were different[. I]t was dark, [and] there were some leaves on them, similar to the pictures that were taken … days later."

Fisk's attorney pointed out Byrne's testimony that he had seen that Fisk's steps were covered in tile with his headlamp and asked Byrne what prevented him from also seeing that Fisk's steps were uneven. Byrne testified as follows:

"The two steps that are uneven [are] the bottom step[--] and I'm going to speculate [--] I mean, I don't remember exactly[,] but I'm going to speculate [that] the leaves and the water had most of that covered[. S]o you know, [I] t[oo]k[] a step, [and] the next four steps are roughly the same height. The top step is not. I'm not going to say whether I noticed[.] I don't remember whether I noticed the change in that top step, but I feel like that might have had something to do with it[. I]t might have something to do with the way I strolled to the top, you know, went to take that step, whatever."

26

When shown photographs of Fisk's steps that Byrne's friend had taken in daylight a few days after Byrne's fall, Byrne agreed that, when looking at those photographs, the unevenness of Fisk's steps was "obvious."[3]

On appeal, Fisk cites <u>Owens</u>, 454 So. 2d at 1387, and <u>Ex parte Industrial Distribution Services Warehouse, Inc.</u>, 709 So. 2d 16 (Ala. 1997), in support of her argument. In a case cited in Byrne's brief, <u>Ex parte Kraatz</u>, 775 So. 2d at 804, this Court addressed both of those decisions. The <u>Ex parte Kraatz</u> Court stated:

> "Each of the plaintiffs in <u>Owens</u> and <u>Ex parte Industrial Distribution Services Warehouse</u> … assumed a risk by walking inside a dark commercial warehouse under abnormal conditions. In haste and through expediency, Owens walked through the dark warehouse from an entrance where no light switch was available instead of going around to an entrance where he knew a light switch was available; and consequently, he tipped over 'the blade of a parked forklift.' <u>Owens</u>, 454 So. 2d at 1389. Jackson, the plaintiff in <u>Ex parte Industrial Distribution Services Warehouse</u>, … commercially undertook an emergency project in a darkened, flooded, storm-ravaged warehouse, where he fell off a loading dock."

---

[3]In her appellate brief, Fisk asserts that Byrne testified that he noticed the unevenness of her steps on the night he fell. Fisk's brief at 11. However, as Byrne points out in his reply brief, during the deposition testimony Fisk cites, Byrne was actually describing the appearance of Fisk's steps when looking at photographs that were taken in daylight a few days after the fall.

Id. Among other things, the Ex parte Kraatz Court reasoned as follows:

> "Partial or poor light, like that in the case before us, could mislead a reasonably prudent person into thinking that he or she would be able to see and to avoid any hazards. The variable factors which make openness-and-obviousness under partial or poor light conditions a fact question not appropriate for resolution by summary judgment are direction, level, color, diffusion, shadows, and like qualities of light, as well as the other physical features of the scene. See, e.g., Woodward [v. Health Care Auth. of Huntsville, 727 So. 2d 814, 816 (Ala. Civ. App.1998)]."

Id. The Ex parte Kraatz Court determined that a summary judgment in favor of the defendant in that case had been inappropriate and reversed the Court of Civil Appeals' decision affirming the summary judgment.

In Ex parte Schaeffel, 874 So. 2d 493, 496 (Ala. 2003), this Court again acknowledged Owens and Ex parte Industrial Distribution Warehouse and further clarified the holding of Ex parte Kraatz by stating: "In these types of cases, the real question is not whether some light exists in some part of a room in which an injury occurs. Instead, we must focus on the specific location of the cause of the injury …."

In light of the foregoing, we cannot conclude, based on Byrne's deposition testimony, that darkness rendered any dangers posed by Fisk's premises open and obvious to any reasonable invitee as a matter of law. See Denmark, 844 So. 2d at 1194. Byrne did not attempt to

28

traverse a totally dark area on Fisk's premises. Instead, Byrne was equipped with a headlamp to illuminate his path. His deposition testimony indicates that the steps leading to Fisk's porch were at least partially illuminated by the headlamp when Byrne attempted to traverse them and subsequently fell.

Thus, the question of how the darkness of Fisk's premises affected or should have affected Byrne's knowledge of any potential dangers is a fact question. Specifically, based on Byrne's deposition testimony, a jury could reasonably conclude that, with the lighting conditions present at the time of Byrne's fall and the appearance of Fisk's steps and porch under those conditions, he knew or should have known that attempting to traverse that path would be dangerous and that the danger presented was, therefore, open and obvious. See Denmark, 844 So. 2d at 1194. Conversely, a jury could also reasonably conclude that Byrne did not notice any hazard on Fisk's premises and that the illumination of Fisk's steps and porch provided by Byrne's headlamp would have led an invitee exercising reasonable care to believe that traversing that path would not be dangerous. See Ex parte Schaeffel, 874 So. 2d at 496 ("[D]im light is light sufficient to make one believe that he can sufficiently see and

identify dangers, but in reality he cannot properly make such identifications.").

"Whether a condition is open and obvious is generally a question for the jury." Denmark, 844 So. 2d at 1195. The lighting conditions present on Fisk's premises at the time of Byrne's fall do not present an exception to the general rule. Accordingly, we cannot conclude that, under the circumstances presented by this case and based on Byrne's deposition testimony, the darkness of Fisk's premises presented an open and obvious danger as a matter of law such that Fisk was entitled to a summary judgment on that ground. See Denmark, 844 So. 2d at 1195.

### B. Water

Fisk notes that, in Owens, 454 So. 2d at 1389-90, this Court also stated: "[W]ater is an open and obvious danger, and hence no duty to warn exists even where the water conceals dangers beneath the surface." However, the case that Owens cited for that proposition was Alabama Great Southern Railroad Co. v. Green, 276 Ala. 120, 159 So. 2d 823 (1964). Green discussed bodies of water, such as pools or ponds, and the hazards associated with entering such bodies of water.

In this case, the water at issue is not a body of water but instead rainfall, and the danger Byrne allegedly encountered was the slickness or slipperiness of the tile covering Fisk's steps and porch resulting from the rainfall. As noted above, Byrne alleges that the tile was not suitable for outdoor use, based on the precautions Byrne took and the equipment he was using at the time. In particular, Byrne testified during his deposition that he was being careful and using the handrail and was wearing slip-resistant boots, as required by his employer, when traversing Fisk's premises.

Byrne knew that it was raining and that Fisk's steps and porch were wet from rainfall. Byrne also testified during his deposition that he knew to be careful in the rain because one can slip and that he had coworkers who had been hurt before. Further, he noticed that Fisk's steps and porch were covered with tile. He agreed when asked by Fisk's attorney whether most surfaces become more slippery when wet than when dry.

When asked by Fisk's attorney whether he would tread lightly and be extra careful when encountering "what appears to be indoor tile covered in rain out on the porch," Byrne testified: "You judge according[]

to whatever kind of surface you're on with experience." Byrne also agreed with Fisk's attorney that "any kind of tile that has water, soap, anything like that on it is going to be slick …." Byrne testified that he had likely delivered mail on porches with wet tile before and that he had encountered a different type of red tile used on residential porches "a thousand times."[4]

The most similar case that Fisk cites in support of her position is Ex parte Neese, 819 So. 2d 584 (Ala. 2001). However, as Byrne points out, Ex parte Neese is distinguishable. In Ex parte Neese, the invitee slipped on a doormat that was wet from rainfall and fell, sustaining injuries. The invitee had visited the premises a few times a year for 18 years before the accident. The doormat had been on the premises for the preceding 8 to 10 years and was usually located in front of the door. However, on the day the invitee fell, the doormat was lying upside down

_____

[4]In her appellate brief, Fisk cites this testimony and asserts that Byrne testified that he had encountered tiled porches like Fisk's "'a thousand times.'" Fisk's brief at 8. However, as noted, Byrne was actually referencing residential porches covered with a type of red tile that was different from the tile covering Fisk's steps and porch on the night of Byrne's fall. Similarly, at a different point in his deposition, Byrne testified that he had been on "millions" of porches with "tile" generally.

in the walkway and was about as wide as the walkway. On the day of the accident, the invitee had "crossed safely over or immediately by the doormat at least three times … during what she described as a 'monsoon[]'…" 819 So. 2d at 590. Moreover, the invitee had "removed her shoes because she was 'afraid that they were probably slippery because they were so wet.' She then walked outside, barefoot, and was walking across the doormat when she slipped on it and fell." Id. Additionally, the invitee testified that, "halfway down the walkway[,] she heard the door open, that she may have heard her name called, but she was not sure, and that she turned around, and fell on the ground." Id. The invitee "attribute[d] her fall to a 'combination of the wet upside-down mat and turning to see what was going on.'" Id.

The Ex parte Neese Court held:

"The upside-down doormat, lying out in the rain, constituted an open and obvious danger on [the] property, which [the invitee], in the exercise of reasonable care, should have recognized, as a matter of law. … The location of the doormat on the property and the fact that it had become wet from the rain would have been as obvious to [the invitee] as it was to [the premises owner]."

Id.

33

In contrast to the invitee in <u>Ex parte Neese</u>, Byrne did not traverse the alleged hazard, in this case Fisk's steps and porch, multiple times in the rain on the day he fell. Additionally, unlike the invitee in <u>Ex parte Neese</u>, Byrne testified that he was wearing slip-resistant footwear and was proceeding carefully as he traversed the alleged hazard at issue. Although it is undisputed that Byrne knew that Fisk's steps and porch were covered in tile and that surfaces, including tile, are generally more slippery when wet, Byrne did not testify that he identified the tile as indoor tile, and therefore potentially more slippery than the types of tile generally used in outdoor settings, before attempting to traverse the steps and the porch.

Based on Byrne's deposition testimony, we conclude that whether Byrne noticed or whether a reasonable invitee in his position would or should have noticed that Fisk's steps and porch were covered in indoor tile, and therefore potentially more slick or slippery than outdoor tile, is a question of fact. In the absence of evidence demonstrating Byrne's experience with the particular wet surface at issue, like the invitee in <u>Ex parte Neese</u>, we cannot conclude that the allegedly dangerous condition presented by rainfall on Fisk's premises was open an obvious as a matter

of law.  See Denmark, 844 So. 2d at 1194.  As with the darkness of Fisk's premises addressed above, the rainwater on her premises does not present an exception to the general rule that the question of openness and obviousness of an allegedly dangerous condition is a question for the jury.  See Denmark, 844 So. 2d at 1195.[5]

C. Byrne's General Knowledge Regarding Fisk's Premises

It is undisputed that Fisk did not warn Byrne of the condition of her steps and porch.  However, we must note Byrne's deposition testimony that he had likely delivered mail to Fisk's residence on more than one occasion before, including within the year preceding his fall; that he had not fallen there before; and that nothing about her porch had "stood out to [him] in any way" before.  It is unclear under what conditions Byrne had previously traversed Fisk's premises.  However, in

_____

[5]In her brief in support of her summary-judgment motion, Fisk argued that Byrne was contributorily negligent because, she said, the danger posed by the wet tile covering her steps and porch was open and obvious and Byrne knew of that danger.  Fisk does not make this same assertion on appeal.  However, as explained above, Byrne's deposition testimony does not establish that the slickness or slipperiness of Fisk's steps and porch was open and obvious as a matter of law.  Moreover, as also noted, Byrne's deposition testimony does not indicate that he noticed that the tile covering the steps and the porch was indoor tile and, therefore, potentially more slippery or slick than outdoor tile, before attempting to traverse them.

making a determination regarding whether the allegedly dangerous conditions of Fisk's premises on the night Byrne fell were open and obvious, the jury can take into consideration the evidence presented regarding Byrne's previous experiences with Fisk's premises and how those experiences affected Byrne's knowledge of Fisk's premises or would or should have affected the knowledge of a reasonable invitee traversing Fisk's premises on that night. See Barnwell, 235 So. 3d at 244 ("'"[T]he plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the jury." F.W. Woolworth Co. v. Bradbury, 273 Ala. 392, 394, 140 So. 2d 824, 825-26 (1962).'" (quoting Howard v. Andy's Store for Men, 757 So. 2d 1208, 1211 (Ala. Civ. App. 2000))).

## Conclusion

We conclude that genuine issues of material fact exist regarding whether a defect or unreasonably dangerous condition existed on Fisk's premises; whether Fisk had knowledge of the alleged defect; whether the alleged defect proximately caused Byrne's injuries; and whether the darkness of Fisk's premises or the rainfall present there constituted open and obvious hazards. Consequently, the circuit court erred by entering a summary judgment in favor of Fisk regarding Byrne's premises-liability

36

negligence claim.  Therefore, the circuit court's judgment is reversed, and this cause is remanded for further proceedings.

REVERSED AND REMANDED.

Parker, C.J., and Shaw, Mendheim, and Mitchell, JJ., concur.